ORIGINAL

FILED
NOV 13 2006
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| MCKING CONSULTING CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | No. 06-766 C<br><br>Judge: ______________ |

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff McKing Consulting Corporation ("McKing"), through its undersigned counsel, files this Complaint for Declaratory and Injunctive Relief against Defendant, the United States of America, acting through the Human Resources and Services Administration ("HRSA") of the Department of Health & Human Services ("HHS") in connection with a contract awarded to Professional & Scientific Associates, Inc. ("PSA") on or about September 28, 2006, under Solicitation 06-S240-0517-SS ("the Solicitation").

McKing has filed a bid protest with the Government Accountability Office ("GAO") and, in this action, seeks a declaration that HRSA's refusal to impose the statutory Competition in Contracting Act ("CICA") stay is arbitrary and capricious, and violates applicable federal procurement regulations.

JURISDICTION

1. This Court has jurisdiction to hear this action pursuant to 28 U.S.C. § 1491(b).

2. Plaintiff McKing is a professional services corporation with its principal place of business located at 2810 Old Lee Highway, Suite 250, Fairfax, Virginia 22031-4376.

3. Defendant is the United States, acting by and through the HRSA, 5600 Fishers Lane, Rockville, MD 20857.

4. The awardee is PSA, a corporation whose principal place of business is 2100 Reston Parkway, Suite 300, Reston, Virginia 20191.

**FACTS**

5. McKing began providing logistical management support services for the MCH/Head Start Regional Oral Health Expert Logistics Management Program under contract, No. HHSH24055006 in September 29, 2004. McKing currently performs work under that contract and will continue to perform the work until at least December 31, 2006. *See* Exhibit A, Declaration of Jeffrey Human, ¶ 5.

6. On August 24, 2006, Stuart Sklamm, the Contracting Officer for HRSA, sent McKing the Solicitation for additional logistical management support services for the MCH/Head Start Regional Oral Health Expert Logistics Management Program for a contract period of 12 months. *See* Exhibit B, Email dated August 24, 2006 from Stuart Sklamm to HHS meetings and J. Chandler, and Exhibit C, Solicitation 06-S240-0517-SS.

7. Rather than re-competing these services through an open procurement, however, the bidding was open only to events management Blanket Purchase Agreement ("BPA") holders pursuant to the Strategic Sourcing Initiative ("SSI"). See Exhibit C, Solicitation 06-S240-0517-SS. As a result, McKing was ineligible to bid on the contract, even though McKing was the incumbent performing those same support services.

8. The work performed by McKing pursuant to its incumbent contract is identical to the work proposed under the BPA task order.

9. HRSA awarded task order HHSH240F5806 to PSA to provide the dental support services for the Head Start Program.

10. On October 6, 2006, McKing timely filed a bid protest with the GAO objecting to the improper use of the SSI for Solicitation No. HHSH240F5806 and HRSA's decision to award the contract to PSA. In its protest, McKing argued that the HRSA's award decision violated law and regulation and prejudices McKing because the HRSA: (1) failed to adhere to the full and open competitive procedures required under CICA, 41 U.S.C. §§ 253 et seq.; (2) improperly applied the SSI to the contract in dispute, thus improperly limiting consideration only to BPA holders; and (3) in so doing, improperly prevented McKing, the incumbent contractor, from competing for the new contract. *See* Exhibit D, McKing's Protest to the GAO, "Stay of Award Requested."

11. McKing's timely GAO protest triggered the statutory CICA stay, 31 U.S.C. § 3553(d)(3) and (4).

12. On November 2, 2006, Jeffrey Human, a Vice President of and Project Director for McKing, spoke with Mark Nehring, the Contracting Officer for the current contract held by McKing, regarding the status of funds and work under the contract. Mr. Nehring told Mr. Human that he had been informed by the HRSA contracts office that he could begin immediate implementation of the disputed PSA contract. Mr. Nehring then indicated that he had already called PSA to arrange to quickly implement that contract so that the work under the contract could be transferred to PSA no later than the beginning of December. See Exhibit A, Human's Declaration, ¶ 7.

13. Although McKing is the incumbent contractor and is prepared to continue performing under its current contract, HRSA failed to provide any justification to override the

stay of performance, nor has the agency filed the Determination and Findings ("D&F") necessary to override the stay, pursuant to 31 U.S.C. § 3553(d)(3)(C).

## COUNT I

14. McKing hereby incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

15. McKing's timely filed October 6, 2006 GAO Protest triggered the applicability of the CICA stay, 31 U.S.C. § 3553, precluding the HRSA and PSA from proceeding with contract performance.

16. Contrary to the requirements of 31 U.S.C. § 3553 and applicable case law, HRSA unlawfully has failed to stay PSA's contract performance pending the resolution of McKing's protest.

WHEREFORE, McKing requests that it be granted the following relief:

1. Pursuant to 31 U.S.C. § 3553, a temporary restraining order and/or a preliminary injunction preventing HRSA and PSA from proceeding with work under task order HHSH240F5806 (MCH/Head Start Regional Oral Health Expert Logistics Management) until McKing's October 6, 2006 GAO Protest is resolved.

2. A permanent injunction and/or declaration that 31 U.S.C. § 3553 precludes HRSA and PSA from proceeding with contract performance pending the resolution of McKing's GAO Protest.

3. Such other relief as the Court deems just and proper.

Dated: November 13, 2006

Respectfully submitted,

By: ______________________
Jessica C. Abrahams

McKENNA LONG & ALDRIDGE LLP
1900 K Street, N.W.
Washington, DC 20006
Tel: (202) 496-7500
Fax: (202) 496-7756

Counsel of Record for Plaintiff McKing Consulting Corporation

Of Counsel:

Shari L. Klevens
Asa Garber
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, DC 20006
(202) 496-7500

DC:50443061.2

# Exhibit A

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| MCKING CONSULTING CORPORATION,<br>Plaintiff,<br>v.<br>THE UNITED STATES OF AMERICA,<br>Defendant. | No. 06-766 C<br>Judge: ________ |

**DECLARATION OF JEFFREY HUMAN**

I, Jeffrey Human, under penalty of perjury, hereby depose and state as follows:

1. I am a Vice President of McKing Consulting Corporation ("McKing"). My business address is 11821 Parklawn Drive, Suite 260, Rockville, Maryland, 20852. I have personal knowledge of all of the facts stated herein.

2. I am familiar with the protest filed by McKing, which has been docketed as B-298964.

3. Formerly, I spent approximately 31 years in federal service, mostly in the Health Resources and Services Administration ("HRSA") and its predecessor organizations. I ran many health programs and for the last ten years of my civil service career, ending in 1997, served in the Senior Executive Service.

4. Currently, I supervise a staff of eight full time employees who all provide assistance to HRSA clients. One of my responsibilities in my current McKing position is serving as Project Director for a Task order with the Maternal and Child Health Bureau ("MCHB") of HRSA, which in turn is a principal operating component of the U.S. Department of Health and Human Services. The Task order is titled, "Provide Logistical Management Support Services for

the Maternal and Child Health Bureau's Head Start Regional Oral Health Experts." The Task order is No. HHSH24055006. It was awarded pursuant to contract No. HHSH2502004460061. This is an Indefinite Delivery-Indefinite Quantity ("IDIQ") contract. McKing won both the contract and relevant task order through a competitive bidding process.

5. McKing began providing logistical management support services for the MCH/Head Start Regional Oral Health Expert Logistics Management Program under contract, No. HHSH24055006 on September 29, 2004. McKing currently performs work under that contract and is scheduled to perform the work until at least December 31, 2006.

6. The work performed by McKing pursuant to its incumbent contract is identical to the work proposed under the BPA task order.

7. On November 2, 2006, I spoke with Mark Nehring, the Contracting Officer for the current contract held by McKing, regarding the status of funds and work under the contract. Mr. Nehring told me that he had been informed by the HRSA contracts office that he could begin immediate implementation of the disputed PSA contract. Mr. Nehring then indicated that he had already called PSA to arrange to quickly implement that contract so that the work under the contract could be transferred to PSA no later than the beginning of December.

8. In this case, there is a distinct likelihood that, if a TRO or preliminary injunction is not granted, PSA will transition into the MCH/Head Start Regional Oral Health Expert Logistics Management Program to the point that McKing will be unable to retain sufficient consultants and staff to immediately resume administration of the contract, with the same level of quality performance, should the GAO ultimately sustain the Supplemental Protest.

9. McKing utilizes twelve highly specialized expert consultants under the current contract to provide oral health assistance to the twelve Head Start regional offices. If the work of

the contract is transferred to PSA, these consultants may be expected to quickly terminate their contracts with McKing and seek work with PSA.

10. McKing already has begun the process of reducing the size of my HRSA group, in part as the result of the anticipated loss of the current MCHB contract. In September I had a staff of nine, now reduced to eight, and two more staff members have been notified that they will be laid off as well. If the TRO or preliminary injunction is granted, however, McKing can continue to staff the project with its existing personnel.

11. If McKing is not in a position to immediately resume high quality performance of the MCH/Head Start Regional Oral Health Expert Logistics Management Program contract, McKing will lose both credibility within MCHB and HRSA and profits.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 10th day of November, 2006.

Jeffrey Hyman

# Exhibit B

-----Original Message-----
**From:** Sklamm, Stu (HRSA) [mailto:SSklamm@hrsa.gov]
**Sent:** Thursday, August 24, 2006 9:21 AM
**To:** HHSmeetings@consolidatedsafety.com; jchandler@planningprofessionals.com
**Cc:** Nehring, Mark (HRSA); Jones, Grey (HRSA)
**Subject:** FW: IDIQ Logistics Management Solicitation 06-S240-0517 MCH/Head Start Regional Oral Health Expert Logistics Management.

Attached for your review and appropriate action is the subject solicitation. Questions are due by August 28 and proposals are due by August 31.

# Exhibit C

**STATEMENT OF WORK**
August 8, 2006

## I. Background

From 1966 through the mid-1990's, the Maternal and Child Health Bureau (MCHB) and its predecessor dental programs collaborated closely with the Administration for Children and Families' Office of Head Start (OHS), formally known as the Head Start Bureau. During that period, MCHB provided the following assistance:

- Provided dental training and technical assistance (T/TA) to Head Start programs across the country.
- Developed dental program protocols and standards.
- Developed dental T/TA networks using the infrastructure of established state run dental programs, professional dental organizations and training institutions representing dentists and dental hygienists.
- Developed appropriate best practice interventions and training programs to support the dental consultant network.
- Developed dental consultant manuals and conducted annual workshops to train new consultants.
- Developed standardized interventions to address problems common to several grantees.

In an effort to consolidate training and technical assistance services to Healthy Start grantees, the OHS ended its collaboration with MCHB in 1993.

Beginning in the mid 1009's, the oral health status of low-income children has gained considerable interest among various Federal programs due to recent research which indicated that they experience a higher prevalence of preventable dental disease than children from families with higher incomes. A review of recent and current Head Start Program Information Report data indicates that access to oral health services is the number one health problem affecting Head Start children and families. Moreover, access to dental services is the health concern most frequently expressed by Administration for Children and Families, Regional Office Program Specialists, Head Start Directors, Health Managers, and parents. In 1994 the newly established Early Head Start program for low-income families with infants and toddlers, and pregnant women also reported difficulties in obtaining both dental preventive and treatment services.

In 1998 the Maternal and Child Health Bureau and The Health Care Financing Administration developed a joint Oral Health Initiative to address the oral health needs of children enrolled in Medicaid and the State Child Health Insurance Program. The following year representatives from MCHB and The Special Supplemental Nutrition Programs for Women, Infants and Children approached the Healthy Start Bureau regarding strategies for improving the oral health status of low-income children. Subsequently, the Head Start and Partners Forum on Oral Health was held in September of 1999 for the purpose of developing strategies to increase collaboration at the Federal, state, and local levels which would lead to improved oral health services for low-income children and families. Each of the Federal partners contributed funds for the

development of three research papers that were presented at the Forum. The papers addressed oral health and nutrition, caries risk assessment and prevention, and access to oral health services, and were subsequently published in the summer 2000 issue of the *Journal of Public Health Dentistry.*

As a result of the September 1999 Oral Health Forum, the Head Start Bureau and the Maternal and Child Health Bureau renewed their collaboration through the development of an Intra-Agency Agreement in 2001. In general, during the first three years of their collaboration OHS and MCHB focused on plan development and on capacity building at the Federal, regional, state, and local levels. Since 2001, 12 Regional Oral Health Forums have been held with 49 additional state Oral Health Forums funded for the purpose of developing Regional and state Oral Health Strategic Plans. In particular, during the first four years the collaborators focused on the following goals:

- Elevating the profile of Head Start among the dental community and beginning to rebuild community linkages between Head Start / Early Head Start programs and dental providers.
- Developing strategies for removing barriers at the national, regional, state and local levels to oral health services for Head Start / Early Head Start children.
- Gathering and assessing education on preventive and early intervention to promote oral health.
- Accessing dental care practices currently being used by Head Start / Early Head Start programs.

Over the next several years, the Head Start Bureau and the Maternal and Child Health Bureau seek to build on their successes since renewing their collaboration in 2001. This includes meeting the following goals:

- Implementing oral health programs to support local Head Start / Early Head Start programs in meeting the oral health requirements of the Head Start Program Performance Standards.
- Implementing the goals of the Head Start Bureau's revised technical assistance system.
- Implementing evidence based preventive, early intervention into service delivery models.
- Implementing promising practices and strategic plans developed at national, regional and local levels.
- Increase the number of pediatric and general dentists available to treat E/HS children.

Under the current Inter-Agency Agreement, the OHS has tasked the MCHB to meet these goals by performing the following activities:

- Provide training and technical assistance to ACF Regional Offices through Regional Oral Health Consultants;
- Review and assess oral health policies impacting services to E/HS children and families;
- Raise public and professional awareness of the oral health needs of HS/EHS programs and develop collaborative programs with organizations at local;
- Enhance information collection and sharing; communication; and resource development and implementation of promising practices, education and service delivery models;
- Explore the feasibility of special projects (i.e., GIS mapping) for strategic planning.

## II. Purpose

The purpose to this Task Order is to provide logistics management services for the staffing of Head Start oral health expert consultants to assist the Office of Head Start (OHS) and Maternal and Child Health Bureau (MCHB) implement Head Start oral health activities at the national and twelve (12) regional levels.

## III. Scope of Work

The scope of work of this Task Order requires reimbursement of travel and/or payment of honoraria for central office and regional consultants, and the occasional payment of other oral health experts to attend meetings and workshops at national, state and local levels as determined by the Project Officer. The consultants and experts will be comprised primarily of dentists and dental hygienists identified by the Project Officer.

The scope of work **does not** include the requirement for the Contractor to manage support for meetings, conferences, training events, etc., in which the Central Office Lead Consultant (COLC), and Regional Head Start Oral Health Consultants (RHSOHC) and other oral health experts participate. The scope of work **does** emphasize the logistic nature of the contract requirement for managing a reimbursement mechanism for honoraria and/or travel in support of Head Start regional activities and events. The following is an estimate of days for which honoraria and travel are needed:

| REGIONS | CONSULTANT TYPE | LOCATION | REGIONAL OFFICE DAYS PER YEAR | TRAINING DAYS PER YEAR | TOTAL DAYS PER YEAR |
|---|---|---|---|---|---|
| Region I | Hygienist | Boston, MA | 75 | 10 | 85 |
| Region II | Dentist | New York, NY | 75 | 10 | 85 |
| Region III | Dentist | Philadelphia, PA | 75 | 10 | 85 |
| Region IV | Dentist | Atlanta, GA | 100 | 10 | 110 |
| Region V | Dentist | Chicago, IL | 100 | 10 | 110 |
| Region VI | Hygienist | Dallas, TX | 100 | 10 | 110 |
| Region VII | Dentist | Kansas City, MO | 75 | 10 | 85 |
| Region VIII | Hygienist | Denver, CO | 100 | 10 | 110 |
| Region IX | Dentist | San Francisco, CA | 100 | 12 | 112 |
| Region X | Hygienist | Seattle, WA | 75 | 10 | 85 |
| Region XI | Dentist | Washington, DC | 100 | 10 | 110 |
| Region XII | Dentist | Washington, DC | 100 | 10 | 110 |
| Central Office | Dentist | Washington, DC | 200 | 20 | 220 |
| Other Consultants | Hygienist | | 20 | 5 | 2.5 |
| Other Consultants | Dentist | | 20 | 5 | 2.5 |

## IV. Tasks

The Contractor shall furnish the necessary personnel, materials, and facilities to perform the following tasks for each scheduled meeting unless otherwise indicated:

### 4.1 Meet with the Project Officer

The Contractor shall meet with Project Officer (PO) within seven (7) days of the effective date of the contract (EDOC) in Rockville, Maryland. The meeting will take place at the office of the Project Officer in Rockville, Maryland to discuss the scope of the contract, including goals and objectives, processes, time frames, priorities, budget issues (including the selection of a COLC, RHSOHCs and other experts that affect implementation of this contract). The Contractor will be informed regarding monthly activity tracking/reporting of consultant activity.

### 4.2 Support for Oral Health Experts

The Contractor shall provide reimbursement of travel and/or payment of honoraria to a COLC and 13 RHSOHCs who will provide oral health expertise to Head Start regional office and contract regional staff. Additionally, the Contractor shall support two other consultants for selected activities as determined by the PO. Support for consultants shall be initiated through an activity request, authorized by the PO, to the Contractor.

The COLC and RHSOHCs and other consultants shall be selected by the Project Officer from a pool of previously identified oral health consultants. Consultant services needed are expected to include:

- Consultant services to the Central Office and Head Start Regional Offices for planning, training, workshops or other activities.. These services will vary in accordance with the table of activity found on page 4 of the Scope of Work.
- The PO may determine if some regions shall receive additional consultant days
- The PO shall approve consultant services on a quarterly basis and review all vouchers for payment of services rendered.
- Honoraria for consultants shall be established by the PO. The amount of honorarium shall vary depending on the educational training and expertise of the RHSOHC. Only dentists and dental hygienists shall be consultants:
    1. Dentists: $500 to $900 per day. (Average $800)
    2. Dental Hygienists: $250 to $500 per day. (Average $400)
- Each RHSOHC is expected to make five (5) out of area trips of two days duration per year.
- Other consultants will be required for 10 trips, of two days duration. The PO shall determine if honoraria and/or travel is to be paid by the Contractor for other consultants for select activities.

### 4.3 Maintain Mailing Lists

The Contractor shall maintain an up-to-date mailing list of all RHSOHCs. The mailing list shall include both email and street addresses to correspond with each. The PO will provide the initial mailing list to the Contractor along with subsequent directions to add or delete names. The Contractor shall include a copy with monthly progress reports.

4.4 Pay Honoraria and Reimburse of Expenses

The Contractor shall reimburse all RHSOHC and other consultants for honoraria and expenses within 30 calendar days of receipt of all required information and receipts. All travel reimbursement should be in accordance with the Federal Travel Regulations.

4.5 Prepare Progress Reports

The Contractor shall provide progress reports on a monthly basis. At a minimum, these reports shall contain the following items:

- Significant problems encountered and corrective action taken
- Monthly and cumulative expenditures
- Projected expenditures
- Recommendations

The Contractor shall prepare the reports to be cumulative in nature. That is, each report shall include information from all previous reporting periods.

## V. SCHEDULE OF DELIVERABLES

Unless otherwise indicated in the Statement of Work, the contractor shall submit the following items in the quantities and by the dates listed below to the Project Officer:

| tem | Description | Quantity | Due Date |
|---|---|---|---|
| 1 | Mailing list | Email + 1 hard copy | Monthly |
| 2 | Honoraria and reimbursements | As required per consultant | 30 calendar days of receipt of all required reimbursement information |
| 3 | Progress reports | Email + 1 hard copy | Monthly |

CONTAINS INFORMATION THAT IS PROPRIETARY TO MCKING CONSULTING CORPORATION AND SHOULD NOT BE DISCLOSED WITHOUT THE PRIOR WRITTEN CONSENT OF MCKING CONSULTING CORPORATION

# Attachment H

A. 04-N240-5031

Attachment A.

## STATEMENT OF WORK

**Background**

From 1966 through the mid-1990's, the Maternal and Child Health Bureau (MCHB) and its predecessor dental programs collaborated closely the Administration for Children and Families' Head Start Bureau (HSB). During that period, MCHB provided the following assistance:

- Provided dental training and technical assistance (T/TA) to Head Start programs across the country.
- Developed dental program policies and standards.
- Developed dental T/TA networks using the infrastructure of established state run dental programs, professional dental organizations and training institutions representing dentists and dental hygienists.
- Developed appropriate best practice interventions and training programs to support the dental consultant network.
- Developed dental consultant manuals and conducted annual workshops to train new consultants.
- Developed standardized interventions to address problems common to several grantees.

In an effort to consolidate training and technical assistance services to Healthy Start grantees, the HSB ended its collaboration with MCHB in 1993.

Subsequently, the oral health status of low-income children has gained considerable interest among various Federal programs due to recent research which indicated that they experience a higher prevalence of preventable dental disease than children from families with higher incomes. A review of recent and current Head Start Program Information Report data indicates that access to oral health services is the number one health problem affecting Head Start children and families. Moreover, this apparent link is the health concern most frequently expressed by Administration for Children and Families, Regional Office Program Specialists, Head Start Directors, Health Managers, and parents. In 1994 the newly established Early Head Start program for low-income families with infants and toddlers, and pregnant women also reported difficulties in those populations obtaining both dental preventive and treatment services.

In 1998 the Maternal and Child Health Bureau and The Health Care Financing Administration developed a joint Oral Health Initiative to address the oral health needs of children enrolled in Medicaid and the State Child Health Insurance Program. The following year representatives from MCHB and The Special Supplemental Nutrition Programs for Women, Infants and Children approached the Healthy Start Bureau regarding strategies for improving the oral health status of low-income children. Consequently, the Head Start and Partners Forum on Oral Health was held in September of 1999 for the purpose of developing strategies to increase collaboration at the Federal, state, and local levels which would lead to improved oral health services for low-income children and families. Each of the Federal partners contributed funds for the development of three research papers that were presented at the Forum. The papers addressed oral health and nutrition, caries risk assessment and prevention, and access to oral health services, and were subsequently published in the summer 2000 issue of the *Journal of Public Health Dentistry*.

As a result of the September 1999 Oral Health Forum, the Head Start Bureau and the Maternal and Child Health Bureau renewed their collaboration with Intra-Agency Agreement in 2001. In general, during the first three years of their collaboration HSB and MCHB focused on plan development and on capacity building at the Federal, regional, state, and local levels. Since 2001, 12 Regional Oral Health Forums have been held with 38 additional state Oral Health Forums being funded for the purpose of developing Regional and state Oral Health Strategic Plans. In particular, during the first three years the collaborators focused on the following goals:

- Elevating the profile of Head Start among the dental community and beginning to rebuild community linkages between Head Start / Early Head Start programs and dental providers.
- Developing strategies for removing barriers at the national, regional, state and local levels to oral health services for Head Start / Early Head Start children.
- Gathering and assessing education on preventive and early intervention to promote oral health.
- Accessing dental care practices currently being used by Head Start / Early Head Start programs.

Over the next several years, the Head Start Bureau and the Maternal and Child Health Bureau seek to build on their successes since renewing their collaboration in 2001. This includes meeting the following goals:

- Implementing oral health programs to support local Head Start / Early Head Start programs in meeting the oral health requirements of the Head Start Program Performance Standards.
- Implementing the goals of the Head Start Bureau's revised technical assistance system.
- Implementing evidence based preventive, early intervention into service delivery models.
- Implementing promising practices and strategic plans developed at national, regional and local levels.

Under the current Inter-Agency Agreement, the HSB has tasked the MCHB to meet these goals by performing the following activities:

- Serve as liaison to all Federal, State and community programs and foundations as it relates to E/HS oral health issues.
- Provide oral health expertise to the HSB.
- Provide oral health expertise at the Regional Office level.
- Integrate E/HS into State dental programs and State Dental Director ongoing activities.
- Increase the number of pediatric and general dentists available to treat E/HS children.
- Continue to raise public and professional awareness of the oral health needs of E/HS programs and develop collaborative programs with these organizations.

Under this contract only the provision of oral health expertise at Regional Office Level shall occur.

**Purpose**

The purpose to this Task Order is to provide logistics management services for Regional Oral Health Care consultants and other oral health experts to provide technical assistance to the twelve (12) Head Start Regional Offices.

**Scope of Work**

The scope of work of this Task Order includes the coordinating the travel and/or honoraria for Regional Oral Health consultants and other oral health experts to attend meetings, workshops and training at the twelve Head Start Regional Offices as determined by the Project Officer. The scope of work **does not** include the requirement for the Contractor to provide logistics management service to support the meetings, conferences, training events, etc. in which the Regional Oral Health consultants and other oral health experts will participate. The consultants and experts will primarily comprise dentists and dental hygienists identified by the Project Officer. The table below provides the estimated number of days by region for which travel and/or honoraria will be required during the period of performance of this Task Order.

| REGIONS | LOCATION | REGIONAL OFFICE DAYS PER YEAR | TRAINING DAYS PER YEAR | TOTAL DAYS PER YEAR |
|---|---|---|---|---|
| Region I | Boston, MA | 50 | 10 | 60 |
| Region II | New York, NY | 50 | 10 | 60 |
| Region III | Philadelphia, PA | 50 | 10 | 60 |
| Region IV | Atlanta, GA | 50 | 10 | 60 |
| Region V | Chicago, IL | 50 | 10 | 60 |
| Region VI | Dallas, TX | 50 | 10 | 60 |
| Region VII | Kansas City, MO | 80 | 10 | 90 |
| Region VIII | Denver, CO | 50 | 10 | 60 |
| Region IX | San Francisco, CA | 85 | 12 | 97 |
| Region X | Seattle, WA | 50 | 10 | 60 |
| Region XI | Washington, DC | 50 | 10 | 60 |
| Region XII | Washington, DC | 50 | 10 | 60 |
| Other Consultants | Locations to be determined | | 10 | 10 |

**Tasks**

The Contractor shall furnish the necessary personnel, materials, and facilities to perform the following tasks for each scheduled meeting unless otherwise indicated:

1. Meet with the Project Officer

   The Contractor shall meet with Project Officer within seven (7) days of the effective date of the contract (EDOC) in Rockville, Maryland. The meeting will take place at the office of the Project Officer in Rockville, Maryland to discuss the scope of the contract, including goals and objectives, processes, time frames, priorities, budget issues

(including the selection of expert consultants, phased in implementation, of regional experts, reporting and others issues that affect implementation of this contract). Based on the results of the meeting, the Contractor shall develop a draft format to be used for the activity tracking spreadsheets as described in Task 4 to identify pre-authorized consulting activities. The Contractor shall revise the draft format based on comments from the Project Officer.

2. <u>Support Regional Oral Health Experts</u>

The Contractor shall support a network of dentists and dental hygienists, Regional Oral Health Experts (ROHE), to provide oral health expertise to Head Start regional office and contract regional staff. Additionally, the Contractor shall support other consultants for selected activities as determined by the PO. Support for the ROHE and other consultants shall be initiated through an activity request, authorized by the PO, to the Contractor. The Contractor shall reimburse and pay honoraria to consultants for technical assistance provided as authorized by the PO through the activity tracking procedure established in Task 1. All reimbursement shall be in accordance with the Federal Travel Regulation and typically comprise travel costs, per diem for MI&E and lodging, and miscellaneous ground transportation costs such as taxis and parking. The Contractor shall not be responsible for coordinating or arranging travel, lodging or logistical support for meetings.

All Regional Oral Health Experts (ROHE) and other consultants shall be selected by the Project Officer. Estimated consultant services include:

- Each ROHE shall provide 50 days of consultant services to Head Start Regional Offices and an additional 10 days of service for planning, training, workshops or other activities per year as determined by the PO. The addition of ROHE will be incremental over the course of the first year of the contract depending upon the developmental stage of the Head Start Regional Office.
- The PO may determine if some regions shall receive additional expert days
- The PO shall approve consultant services on a quarterly basis and review all vouchers for payment of services rendered.
- Honoraria for ROHE shall be established by the PO. The amount of honorarium shall vary depending on the educational training and expertise of the ROHE. Only dentists and dental hygienists shall be ROHE:
    1. Dentists: $400 to $900 per day. (Average $700)
    2. Dental Hygienists: $200 to $400 per day. (Average $300)
- Each ROHE is expected to make 5 out of area trips of two days duration per year.
- Other consultants will be required for 10 trips, of two duration, for each of the two years of the contract. The PO shall determine if honoraria and/or travel is to be paid by the Contractor for other consultants for select activities.

3. <u>Maintain Mailing Lists</u>

The Contractor shall maintain and update mailing list of ROHE's. The mailing list shall include both email and street addresses as necessary to correspond with each. The Project Officer will provide the initial mailing list to the Contractor along with subsequent direction to add or names. The Contractor shall include a copy of with the monthly progress reports.

4. Track Activities

The Contractor shall track the activities of all ROHE and consultants using the activity tracking spreadsheets. The Contractor shall transmit the spreadsheets to the Project Officer on a monthly basis for his analysis of the amount and types of support requested and provided. The Contractor shall meet with the Project Officer to determine the elements to be collected and the format in which these reports are to be made.

5. Pay Honoraria and Reimburse of Expenses

The Contractor shall reimburse all ROHE and other consultants for honoraria and expenses within 30 calendar days of receipt of all required information and receipts. All travel reimbursement shall be in accordance with the Federal Travel Regulations.

6. Prepare Progress Reports

The Contractor shall provide progress reports on a quarterly basis. At a minimum these reports shall contain the following items:

- Significant accomplishments.
- Significant problems encountered and corrective action taken.
- Monthly and cumulative Expenditures.
- Projected future activities.
- Recommendations

The Contractor shall prepare the reports to cumulative in nature. That is, each report shall include information from all previous reporting periods.

# Exhibit D

McKenna Long & Aldridge LLP
Attorneys at Law

Atlanta
Denver
Los Angeles
Philadelphia

1900 K Street, NW • Washington, DC 20006
202.496.7500 • Fax: 202.496.7756
www.mckennalong.com

San Diego
San Francisco
Washington, DC
Brussels

JESSICA C. ABRAHAMS
(202) 496-7204

EMAIL ADDRESS
jabrahams@mckennalong.com

**CONTAINS INFORMATION THAT IS PROPRIETARY TO MCKING CONSULTING CORPORATION AND SHOULD NOT BE DISCLOSED WITHOUT THE PRIOR WRITTEN CONSENT OF MCKING CONSULTING CORPORATION**

**STAY OF AWARD REQUESTED**

October 6, 2006

**BY FACSIMILE (202) 512-9749**

Anthony Gamboa
General Counsel
U.S. Government Accountability Office
441 G Street, N.W.
Washington, D.C. 20548
Attention: Procurement Law Control Group

Re: Protest of McKing Consulting Corporation; Department of Health and Human Services No. HHSH240F5806

Dear Mr. Gamboa:

McKing Consulting Corporation ("McKing"), by its undersigned attorney, hereby timely protests the decision of the Health Resources and Services Administration ("HRSA") to award a contract to Professional & Scientific Associates, Inc. ("PSA" or "Awardee") as contract number HHSH240F5806. The requirements being procured involve the provision of logistical management support services for the Maternal and Child Health Bureau's Head Start Regional Oral Health Experts. Rather than award the contract competitively consistent with the requirements of the Competition in Contracting Act ("CICA"), 41 U.S.C. §§ 253 et seq., HRSA has made an improper award to PSA[1] in order to meet its goals under the Strategic Sourcing Initiative ("SSI").

[1] PSA is one of four contractors with a Blanket Purchase Agreement ("BPA") in the area of events management, award to which counts towards HRSA's SSI goal.

As detailed below, HRSA's award decision violates law and regulation and prejudices McKing, the incumbent contractor, because it could not lawfully use the Strategic Sourcing Initiative ("SSI") to procure the relevant services, and therefore HRSA has violated the fundamental tenets of Government Contracts and contravened the competition requirements as prescribed by 41 U.S.C. §§ 253 et seq.

# I. OVERVIEW

## A. Parties

### 1. Protester:

McKing Consulting Corporation
2810 Old Lee Highway, Suite 250
Fairfax, Virginia 22031-4376
Tel: (703) 204-2385
Fax: (703) 204-2704
Email: mccliggott_duane@msn.com
Attn: Duane McCliggott

### 2. Issuing Agency and Contracting Officer:

Email and Mailing Address:
Stuart Sklamm
Contracting Officer
Health Resources and Services Administration
Maternal and Child Health Bureau
Parklawn Building
Room 10A-39
5600 Fishers Lane
Rockville, MD 20857
Tel: (301) 443-3449
Fax: (301) 443-1296
Email: SSklamm@hrsa.gov

A copy of this protest will be served on Mr. Sklamm the same day as its filing with the Government Accountability Office ("GAO").

## B. Interested Party

McKing is the incumbent contractor that provided the relevant services pursuant to Contract No. HHSH24055006. Had the services been procured properly under CICA, McKing likely would have been the successful offeror. Thus, McKing's direct economic interest has been adversely affected by HRSA's decision to make the award to PSA. 4 C.F.R. § 21.0(a). McKing is an interested party to protest the award because it is capable of supplying the services being awarded to PSA pursuant to the contract. But for the prejudicial error made by HRSA in neglecting to conduct full and open competitive procedures, McKing would have competed for the contract in question. *Id.*

### C. Timeliness and Request for Stay of Performance

On August 24, 2006, McKing received an e-mail from Stuart Sklamm, Contracting Officer for the HRSA, with solicitation 06-S240-0517-SS attached. This task order was to provide logistical management support services for the MCH/Head Start Regional Oral Health Expert Logistics Management for 12 months, the same work that McKing had been providing as the incumbent contractor and which McKing expected to be re-competed through an open procurement. *See* Email dated August 24, 2006 from Stuart Sklamm to HHS meetings and J. Chandler (attached at A), and Solicitation 06-S240-0517-SS (attached at G). Duane McCliggott was informed through HHS meetings on the afternoon of August 24, 2006 regarding this information. *See* Email dated August 24, 2006 from HHS Meetings to Duane McCliggott (Attached at B). McKing was ineligible to bid for the contract, as the bidding was open only to Blanket Purchase Agreement ("BPA") holders.

A letter of inquiry was sent on behalf of McKing to Steven Zangwill, Director of HRSA, Division of Procurement Management. The letter expressed McKing's belief that limiting the bidding to BPA holders pursuant to the SSI was in violation of the Competition in Contracting Act ("CICA"), 41 U.S.C. §253 et seq. *See* Letter dated August 29, 2006 from Jessica Abrahams to Steven Zangwill (attached as C). An additional letter was sent September 6, 2006, restating McKing's protest of the use of the SSI and the failure to adhere to the requirements of CICA. *See* Letter dated September 6, 2006, from Jessica Abrahams to Steven Zangwill (attached as D). Having received information that the matter had been forwarded to HRSA's general council for further review, a letter was also sent to the General Counsel's office, again challenging the use of the SSI in this matter. *See* Letter dated September 20, 2006, from Jessica Abrahams to David Benor (attached as E). A response from Steven Zangwill was received on September 27, 2006, denying that CICA was violated. *See* Letter dated September 21, 2006 and received September 29, 2006 from Steven Zangwill to Jessica Abrahams (attached as F).

On September 28, 2006, PSA was awarded task order HHSH240F5806, to provide the dental support services for the Head Start Program. This protest is timely filed for purposes of 4 CFR §21.0(a)(3), having been filed within 10 days of knowledge of the initial adverse agency action, *i.e.* the awarding of the contract without adhering to CICA requirements. Accordingly, performance of the contract award must be stayed pending disposition of the protest. 31 U.S.C. §3553(d)(3) and (4).

### D. Request for Documents

Pursuant to 4 C.F.R. § 21.1(d)(2), a request for documents is included below.

### E. Request for Telephone Notice to the Agency

Pursuant to 4 C.F.R. § 21.3(a), McKing requests that GAO, Procurement Law Division telephone the contracting agency, HRSA, to advise it that a protest has been filed, notifying the agency of its statutory obligation under 31 U.S.C. § 3553(d)(3) and (4) to stay the procurement and contract award pending resolution of this protest.

Mr. Stuart Sklamm

Tel: (301) 443-5260

**F. Request for Issuance of a Protective Order**

Pursuant to 4 C.F.R. § 21.4, McKing requests that a Protective Order be issued as the record in this case will likely contain proprietary and source selection information that should be protected from public disclosure.

**G. Request for a Hearing**

Pursuant to 4 C.F.R. § 21.1(d)(3) and § 21.7(a), McKing requests a hearing be held on the merits of the protest.

## II. FACTUAL BACKGROUND

### A. McKing

McKing is a minority- and woman-owned professional services corporation certified to participate in the U.S. Small Business Administration's 8(a) program until May 18, 2010. McKing's corporate headquarters is located in Fairfax, Virginia. Additional full-service offices are located in Atlanta, Georgia, and Rockville, Maryland. McKing provides a variety of information technology and general and specialized management consulting services to numerous Federal Government clients, a number of States under its Federal contracts, and private sector clients, both for profit and nonprofit. Additionally, as the incumbent, McKing was awarded and completed the work at issue here pursuant to Contract No. HHSH24055006, which expires on December 31, 2006.

### B. The Strategic Sourcing Initiative ("SSI") and 41 U.S.C. §253

The SSI was issued by the Office of the Secretary for Administration and Management (OSAM) of the Department of Health and Human Services (DHHS). The purpose of the policy is to reduce operational costs by using Blanket Purchase Agreements (BPA's) with vendors to receive discounts. *Cygnus Corp. v. United States*, 2006 U.S. Claims LEXIS 262, 6 (Ct. Cl. 2006). The government is a high-volume consumer of goods and services; as such, the SSI was implemented to lower prices paid by government agencies by using the purchasing leverage such mass quantities entail. *See* "Implementing Strategic Sourcing," Memorandum for Chief Acquisition Officers; Clay Johnson III; May 20, 2005; http://www.whitehouse.gov/omb/procurement/comp_src/implementing_strategic_sourcing.pdf (last visited October 5, 2006).

The SSI is restricted to four types of services: (1) temporary administrative and professional staffing services; (2) temporary professional and medical staffing services; (3) event management services; and (4) laboratory supply services. *Cygnus*, 2006 U.S. Claims LEXUS 262 at 6. These types of services were chosen as they lend themselves to savings through high volume purchasing; otherwise, agencies are to seek the lowest responsible bids through full and open competitive procedures. *See* 41 U.S.C. § 253.

Although the applicability of the SSI is restricted to four areas, agencies may feel pressured to improperly utilize the SSI procedures for contracts that fall outside the SSI scope. This is due to the fact that the Office of Management and Budget (OMB) has placed quotas on agencies to use strategic sourcing. For example, in aforementioned "Implementing Strategic Sourcing" memorandum, the OMB requires that each Chief Acquisition Officer (CAO) "shall identify no fewer than three commodities that could be purchased more effectively and efficiently through the application of strategic sourcing." The OMB further requires that "annual strategic sourcing goals and objectives" are set, and "measures and reporting requirements" are made in order to ensure strategic sourcing goals are met. Although in opposition to the purpose of SSI, *i.e.* to lower the cost of government purchases, such stringent requirements for use of the SSI could lead agencies to attempt to use the SSI when it is inapplicable or would not result in the low cost provider.

It is important to emphasize that the purpose of the SSI, to reduce operational costs, parallels the purposes of the Competition in Contracting Act, 41 U.S.C. § 253. The dual purposes of the full and open competitive procedures are: (1) to ensure that a procurement is open to all responsible sources, and (2) to provide the government with the opportunity to receive fair and reasonable prices. *Matter of Western Roofing Services*, 70 Comp. Gen. 323, 4 (Comp. Gen. 1991). Ultimately, the result of full and open competition is "the lowest overall cost meeting government needs" by a responsible source. *Matter of Amray, Inc.*, 69 Comp. Gen. 456, 6 (Comp. Gen. 1990). This goal is shared by the SSI. *See Cygnus*, 2006 U.S. Claims LEXIS 262 at 6. The SSI is not a replacement for or an exception to CICA. The requirements for full and open competition established by CICA are paramount; failure to adhere to the competition requirements undermines the integrity and fundamental tenets of the procedural process.

### C. The Solicitation

PSA was awarded Contract No. HHSH240F5806 on September 28, 2006, pursuant to its events management BPA in order to assist HRA in meeting its goals under the SSI. The bidding process was not open to competitive bidding as required under 42 U.S.C. § 253. Rather, the process operated as if it conformed with requirements for the SSI.

## III. BASIS FOR PROTEST

### A. HRSA Improperly Solicited the Contract among only the Strategic Sourcing BPA holders

HRSA cannot use the SSI for the work in question because the services required in the contract are not one of the four services which allow use of the SSI. As previously mentioned, the SSI is limited to four types of services: (1) temporary administrative and professional staffing services; (2) temporary professional and medical staffing services; (3) event management services; and (4) laboratory supply services. *Cygnus*, 2006 U.S. Claims LEXIS 262 at 6. Accordingly, HRSA improperly awarded the work to PSA pursuant to its events management BPA.

However, the work involved in the task order here does not require staffing or event management, as is clear from the "Statement of Work," Solicitation 06-S240-0517-SS (attached at G). First, as stated under the "Scope of Work," "[t]he consultants and experts will be comprised primarily of dentists and dental hygienists *identified by the Project Officer*." The contractor is not in charge of obtaining the professional and medical staff. Solicitation 06-S240-0517-SS (attached at G), p. 4.

Second, as stated, "[t]he scope of work **does not** include the requirement for the Contractor to manage support for meetings, conferences, training events, etc., in which the Central Office Lead Consultant (COLC), and the Regional Head Start Oral Health Consultants (RHSOHC) and other oral health experts participate." Solicitation 06-S240-0517-SS (attached at G), p. 4. Thus, the events involved in the contract are not to be managed by the contractor. The responsibilities involved in the contract here are not like those that have previously been recognized as "event management," such as when contractors are required "to provide tools for order placement, tools for registration of attendees, provide on-line tutorials and event-specific training, facilitate planning meetings, manage logistics, provide status reports, and provide event specific performance-based reports." *Cygnus*, 2006 U.S. Claims LEXIS 262 at 8. Here, the training will be done by dentists and dental hygienists chosen by the Project Officer; also, the event planning will be handled outside the contract. *See* Solicitation 06-S240-0517-SS (attached at G), p. 4.

Ultimately, the bulk of the responsibilities of the contractor is in "managing a reimbursement mechanism for honoraria and/or travel in support of Head Start regional activities and events." Solicitation 06-S240-0517-SS (attached at G), p. 4. This, however, is a payroll and reimbursement service, not an event management service. The additional task of preparing progress reports only reemphasizes the true nature of this contract; these reports are to contain "monthly and cumulative expenditures" and "projected expenditures" relating to the honoraria payments and reimbursements made. Solicitation 06-S240-0517-SS (attached at G), p.6. They involve no direct relation to managing an event, as is required by the SSI. Although a reimbursement or payment might be made to a health expert who attended a conference or training session, the duties of the contract are unaffected by the fact that an event occurred. Rather, the contractor need only know that a payment is authorized. *See* Solicitation 06-S240-0517-SS (attached at G), pp. 4-6.

It should also be noted that the solicitation unquestionably represents the same task order as was held by McKing. That task order was held to full and open competition, as per 41 U.S.C. § 253. The responsibilities of Solicitation 06-S240-0517-SS (attached at G), do not differ in substance from the terms of McKing's previous contract, Contract no. HHSH24055006 (attached as H). McKing's contract stated that "[t]he scope of work of this Task Order includes the (sic) coordinating the travel and/or honoraria for Regional Oral Health consultants and other oral health experts to attend meetings, workshops and training at the twelve Head Start Regional Offices as determined by the Project Officer. The scope of work **does not** include the requirement for the Contractor to provide logistics management service to support the meetings, conferences, training events, etc. in which the Regional Oral Health consultants and other oral health experts will participate." Contract no. HHSH24055006 (attached as H), p. 5. Indeed, the whole of responsibilities, including reimbursements, payments of honoraria, progress reports,

mail list maintenance, and other support, do not differ consequentially between the two task orders. *Compare* Contract no. HHSH24055006 (attached as H), pp. 5-7, *with* Solicitation 06-S240-0517-SS (attached at G), pp. 5-6.

Since the requirements of the SSI are not met by the purposes of and activities required under this contract, HRSA cannot use the SSI to consider only Events Management Strategic Sourcing BPA for the contract.

### B. HRSA Failed to Adhere to the Requirements of CICA

Since the SSI does not apply to this contract, HRSA must adhere to the full and open competitive procedures of 41 U.S.C. § 253. However, by excluding McKing and all others not qualifying as Strategic Sourcing BPA holders, HRSA did not obtain full and open competition through the use of competitive procedures, in accordance with the requirements of 41 U.S.C. §§ 251 et seq. and the Federal Acquisition Regulation.

As stated previously, the dual purpose of the full and open competitive procedures is (1) to ensure all responsible sources have an opportunity to bid on the contract, and (2) to ensure that the government can receive the lowest price from a responsible bidder. *See Western*, 70 Comp. Gen. 323 at 4-5. The full and open competitive procedures require agencies to entertain bids from all "responsible prospective contractors." *See* FAR §§ 6, 9.1. This is not a mere technicality; open competition is integral in achieving the purpose of 41 U.S.C. § 253, *i.e.* to provide the government with low cost, responsible contractors.

The purpose of this protest is to ensure that the government is provided with the low cost, responsible contractor. McKing only wishes, as it successfully did in the previous term, to provide the services under the contract at a low cost to HRSA.

## III. CONCLUSION

As detailed above, the work awarded to PSA pursuant to its events management BPA does not qualify for the special procedures of the SSI. As such, in failing to conduct full and open competitive procedures in awarding the Head Start dental logistics sources, HRSA is in violation of CICA. Thus, the award to PSA is contrary to statute and regulation, and cannot stand. Accordingly, McKing respectfully requests that the protest be sustained and that the task order be reopened to full and fair competition.

## IV. DOCUMENTS REQUESTED

Pursuant to 4 C.F.R. § 21.3(d), McKing requests that HRSA file with its report, or otherwise make available, certain documents that are essential to a full and fair evaluation of the issues presented herein. Those documents include, but are not limited to, the documents identified in the following Requests for Production of Documents. To the extent necessary to permit access by McKing to the requested documents, McKing requests that a protective order be issued by GAO pursuant to 4 C.F.R. § 21.4. McKing and its attorneys will comply with the terms of any reasonable protective order.

In accordance with 4 C.F.R. § 21.1(d)(2), McKing hereby requests that in addition to the documents required by 4 C.F.R. § 21.3(d), the following relevant documents be produced to its counsel:

1. All documentation relating to any writings or discussions concerning the contract in question, or solicitation of any services related to the contract. This request is relevant to propriety of the decision to choose PSA without full and open competitive procedures.

2. All documentation constituting or relating to the award of the contract to PSA, including any documents, records, or recorded discussions relating to the awarding of the contract to PSA, in any form, including but not limited to meeting minutes, notes taken during any meetings, notes taken during telephone conversations, and any e-mail correspondence. This request is relevant to propriety of the decision to choose PSA without full and open competitive procedures.

3. All documentation relating to the consideration of awarding the contract to any other party, including any documents, records, or recorded discussions relating to the possible awarding of the contract to another party, in any form, including but not limited to meeting minutes, notes taken during any meetings, notes taken during telephone conversations, and any e-mail correspondence. This request is relevant to propriety of the decision to solicit the contract without full and open competitive procedures.

4. All documents relating to discussions involving the use of the SSI and the selection of BPA holders by HRSA, including any goals or quotas which HRSA had set or sought to achieve in using the SSI, and in granting contracts to BPA holders. This is to include any communications from OMB or other agencies in regards to HRSA obligations under or suggested use of the SSI, and any intra-agency communications made in response or with general reference to the use of the SSI. This request is relevant to the propriety of the use of SSI in HRSA.

5. All documents constituting or relating to past performance, evaluation, scoring, or selection of McKing in obtaining or performing the previous contract, order #HHSH24055006, or with regard to any actions related to the subject matter of that previous or the current contract in question. This request is relevant to the propriety of the failure to use full and open competitive procedures in selecting a contractor.

6. All documents relating to HRSA's consideration of PSA or other applicants for the contract.

7. All other documents relating to HRSA's decision to award the contract to PSA.

## V. RELIEF REQUESTED

McKing was severely prejudiced by being excluded from the bidding process, having no opportunity to compete for the contract. McKing is a serious competitor in specialized management consulting services, as evidenced by McKing's status as incumbent contractor. McKing would likely be the successful offeror in a full and open competition.

For the reasons set forth above, McKing requests that GAO sustain the protest, recommending that HRSA recompete the work pursuant to an unrestricted competitive procurement. In addition, McKing requests the GAO award it reasonable protest costs, including attorney's fees, as provided by 4 C.F.R. § 21.8, and whatever other relief GAO deems just and appropriate.

McKing also requests the GAO notify the agency of its obligation to stay the award of a contract under the Solicitation pending the resolution of this protest.

## VI. COPIES OF THIS PROTEST

A copy of this protest is being provided on the day of filing to the Contracting Officer, Stuart Sklamm, via facsimile and email.

Respectfully submitted,

Jessica C. Abrahams
Asa Garber
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C. 20006
(202) 496-7500
(202) 496-7756 (fax)

Attorneys for McKing Corporation

CONTAINS INFORMATION THAT IS PROPRIETARY TO MCKING CONSULTING CORPORATION AND SHOULD NOT BE DISCLOSED WITHOUT THE PRIOR WRITTEN CONSENT OF MCKING CONSULTING CORPORATION

# Attachment A

-----Original Message-----
**From:** Sklamm, Stu (HRSA) [mailto:SSklamm@hrsa.gov]
**Sent:** Thursday, August 24, 2006 9:21 AM
**To:** HHSmeetings@consolidatedsafety.com; jchandler@planningprofessionals.com
**Cc:** Nehring, Mark (HRSA); Jones, Grey (HRSA)
**Subject:** FW: IDIQ Logistics Management Solicitation 06-S240-0517 MCH/Head Start Regional Oral Health Expert Logistics Management.

Attached for your review and appropriate action is the subject solicitation. Questions are due by August 28 and proposals are due by August 31.

CONTAINS INFORMATION THAT IS PROPRIETARY TO MCKING CONSULTING CORPORATION AND SHOULD NOT BE DISCLOSED WITHOUT THE PRIOR WRITTEN CONSENT OF MCKING CONSULTING CORPORATION

# Attachment B

TimeToFile.doc

----- Original Message -----
**From:** HHS Meetings
**To:** mccliggott_duane@msn.com
**Sent:** Thursday, August 24, 2006 3:00 PM
**Subject:** FW: IDIQ Logistics Management Solicitation 06-S240-0517 MCH/Head Start Regional Oral Health Expert Logistics Management.

Mr. McCliggott,

Attached is the RFQ we received this morning, per our phone conversation. I plan to respond to Mr. Sklamm later today and let him know that CSS cannot bid on this request under the terms of the HHS Events Management BPA.

Regards,

Nathalie Panayiotakis
Consolidated Safety Services, Inc.
10301 Democracy Lane, Suite 300
Fairfax, VA 22030
Phone: 703-691-4612 ext. 345
Direct Line: 703-877-3345
Fax: 703-691-4615

CONTAINS INFORMATION THAT IS PROPRIETARY TO MCKING CONSULTING CORPORATION AND SHOULD NOT BE DISCLOSED WITHOUT THE PRIOR WRITTEN CONSENT OF MCKING CONSULTING CORPORATION

# Attachment C

McKenna Long & Aldridge LLP
Attorneys at Law

Atlanta
Denver
Los Angeles
Philadelphia

1900 K Street, NW • Washington, DC 20006
202.496.7500 • Fax: 202.496.7756
www.mckennalong.com

San Diego
San Francisco
Washington, DC
Brussels

JESSICA C. ABRAHAMS
(202) 496-7204

EMAIL ADDRESS
jabrahams@mckennalong.com

August 29, 2006

**VIA HAND DELIVERY**

Mr. Steven L. Zangwill, Director
HRSA, Division of Procurement Management
5600 Fishers Lane, Room 13A-19
Rockville, Maryland 20857

Re: MCH/Head Start Regional Oral Health Expert Logistics Management; Solicitation No. 06-S240-0517

Dear Mr. Zangwill:

I am writing on behalf of McKing Consulting Corporation ("McKing") regarding the above-referenced solicitation and the apparent intent of the Health and Resource Services Administration ("HRSA") to procure dental services associated with the Head Start maternal and child healthcare program through the use of this acquisition vehicle. As you are no doubt aware, McKing is currently providing these services pursuant to Contract No. HHSH250200446006I, which expires in late September.

McKing believes that this work should be re-competed pursuant to an unrestricted solicitation for an indefinite delivery indefinite quantity ("IDIQ") contract. Such a course of action would permit McKing and other qualified offerors the opportunity to compete and would be consistent with the requirements of the Competition in Contracting Act ("CICA"), 41 U.S.C. 253 *et seq.*

It has come to our attention that, rather than comport with CICA, in an effort to satisfy its goals pursuant to the Strategic Sourcing Initiative ("SSI"), HRSA has chosen to limit competition to four companies with which it has blanket purchase agreements ("BPAs") for events management. HRSA has taken this action without regard to whether any of the BPA contractors is qualified to provide the relevant dental services or whether the services even arguably fall within the scope of the events management classification. McKing believes that HRSA's decision to proceed pursuant to an SSI BPA is inconsistent with applicable law and regulation and is at odds with the fundamental mission of the Head Start program.

To the extent HRSA determines to proceed with a contract award pursuant to the SSI BPA, kindly notify McKing as soon as possible thereafter so that McKing may take necessary steps to protect its interests. If you have any questions or wish to discuss this further, please do not hesitate to contact me. I can be reached at 202-496-7204. In the meantime, we would appreciate the opportunity to meet with you to discuss the Strategic Sourcing Initiative.

Sincerely,

Jessica C. Abrahams

cc: Alexandra B. Garcia

CONTAINS INFORMATION THAT IS PROPRIETARY TO MCKING CONSULTING CORPORATION AND SHOULD NOT BE DISCLOSED WITHOUT THE PRIOR WRITTEN CONSENT OF MCKING CONSULTING CORPORATION

# Attachment D

Atlanta
Denver
Los Angeles
Philadelphia

McKenna Long & Aldridge LLP
Attorneys at Law
1900 K Street, NW • Washington, DC 20006
202.496.7500 • Fax: 202.496.7756
www.mckennalong.com

San Diego
San Francisco
Washington, DC
Brussels

JESSICA C. ABRAHAMS
(202) 496-7204

EMAIL ADDRESS
jabrahams@mckennalong.com

September 6, 2006

Mr. Steven L. Zangwill, Director
HRSA
Division of Procurement Management
5600 Fishers Lane Room 13A-19
Rockville MD 20857

**Re: MCH/Head Start Regional Oral Health Expert Logistics Management; Solicitation No. 06-S240-0517**

Dear Mr. Zangwill:

Further to our letter of August 28, 2006 on behalf of McKing Consulting Corporation ("McKing") regarding the above-referenced solicitation and the apparent intent of the Health and Resource Services Administration ("HRSA") to procure dental services associated with the Head Start maternal and child healthcare program through the use of this acquisition vehicle, we understand the deadline for submission of proposals under the Strategic Sourcing Initiative ("SSI") passed upon>the close of business, September 1, 2006. Again, McKing is currently providing these services pursuant to Contract No. HHSH250200446006I, which expires in late September.

We request that you confirm, with the passage of the deadline for submission of proposals under the SSI, and as soon as possible, that this work will be re-competed pursuant to an unrestricted solicitation for an indefinite delivery indefinite quantity ("IDIQ") contract. As we stated in our previous correspondence, such a course of action would permit McKing and other qualified offers the opportunity to compete and would be consistent with the requirements of the Competition in Contracting Act ("CICA"), 41 U.S.C. 253 et seq.

Once again, to the extent HRSA determines to proceed with a contract award pursuant to the SSI BPA, kindly notify McKing as soon as possible thereafter so that McKing may take necessary steps to protect its interests. If

you have any questions or wish to discuss this further, please do not hesitate to contact me. We can be reached at 202-496-7500.

Sincerely,

Jessica Abrahams
Counsel for McKing Consulting Corporation

DC:50431317.1

CONTAINS INFORMATION THAT IS PROPRIETARY TO MCKING CONSULTING CORPORATION AND SHOULD NOT BE DISCLOSED WITHOUT THE PRIOR WRITTEN CONSENT OF MCKING CONSULTING CORPORATION

# Attachment E

Atlanta
Denver
Los Angeles
Philadelphia

McKenna Long & Aldridge LLP
Attorneys at Law

1900 K Street, NW • Washington, DC 20006
202.496.7500 • Fax: 202.496.7756
www.mckennalong.com

San Diego
San Francisco
Washington, DC
Brussels

JESSICA C. ABRAHAMS
(202) 496-7204

EMAIL ADDRESS
jabrahams@mckennalong.com

September 20, 2006

David E. Benor, Esq.
Associate General Counsel
Health and Resource Services Administration
5600 Fishers Lane, Parklawn Building
Room 4A-53
Rockville, Maryland 20857

Re: MCH/Head Start Regional Oral Health Expert Logistics Management;
Solicitation No. 06-S240-0517

Dear Mr. Benor:

I am writing on behalf of McKing Consulting Corporation ("McKing") as a follow-up to my previous letters to Mr. Steven L. Zangwill regarding the above-referenced solicitation and the apparent intent of the Health and Resource Services Administration ("HRSA") to procure dental services associated with the Head Start maternal and child healthcare program through the use of this acquisition vehicle. It is my understanding that the matter has been forwarded to your office for legal review.

As stated in my letters to Mr. Zangwill, we do not believe that it is appropriate to re-procure the requisite dental services for the Head Start Program by limiting competition to the four companies with which HRSA has blanket purchase agreements ("BPAs") for events management instead of through an open procurement vehicle as has been done in the past. The relevant work involves scheduling dentist appointments and reimbursement of dental professionals for travel expenses and consultant fees. A review of the requirements in the existing contract makes clear that no "events management" functions are included. Moreover, to the extent there is any doubt, the express language of the contract is unequivocal in this regard. Specifically, Section III of the Scope of Work states at page 4, "The scope of work does not include the requirement for the Contractor to manage support for meetings, conferences, training vents, . . . ."

Furthermore, the Strategic Sourcing Initiative ("SSI") BPAs are strictly limited to "Events Management" under the GSA AIMS schedule. The GSA AIMS schedule for Events Management does not have any labor categories for dentists or dental hygienists. Those

categories would be covered under the GSA MOBIS schedule, a schedule that the SSI BPA holders cannot use. Accordingly, HRSA cannot procure the MCH/Head Start Regional Oral Health Expert Logistics Management services through the SSI BPAs. The work should properly be re-competed pursuant to an unrestricted solicitation for an indefinite delivery indefinite quantity ("IDIQ") contract, consistent with the Competition in Contracting Act ("CICA"), 41 U.S.C. 253 *et seq.*

We would appreciate notification of how HRSA intends to proceed with regard to the acquisition of the above-referenced services. If you have any questions or wish to discuss this further, please do not hesitate to contact me. I can be reached at 202-496-7204.

Sincerely,

Jessica C. Abrahams

CONTAINS INFORMATION THAT IS PROPRIETARY TO MCKING CONSULTING CORPORATION AND SHOULD NOT BE DISCLOSED WITHOUT THE PRIOR WRITTEN CONSENT OF MCKING CONSULTING CORPORATION

# Attachment F

**DEPARTMENT OF HEALTH & HUMAN SERVICES**
HEALTH RESOURCES AND SERVICES ADMINISTRATION

SEP 21 2006

received
9-27-06

Ms. Jessica Abrahms
McKenna, Long & Aldridge
1900 K Street N. W.
Washington, DC 20006

RE: MCHB/Head Start Regional Oral Health Expert Logistical Management; Solicitation No. 06-S240-0517

Dear Ms. Abrahms:

This letter is in response to your inquiries of August 29 and September 6, 2006, regarding the above referenced solicitation and the allegation that HRSA is not in comport with the Competion in Contracting Act (CICA), 41 U.S.C. 253 et seq. HRSA treats this matter and its obligations to CICA seriously. Accordingly, HRSA would not have proceeded to compete this requirement among the Strategic Sourcing BPA holders if it was outside the scope of work of this vehicle and/or not meeting the requirements under Federal Acquisition Regulations (FAR) 8.002(a)(2)(iii) for Priority of Use of Government Supply Sources,

The Events Management Strategic Sourcing BPA Statement of Work allows agencies to obtain Fiduciary Services necessary to be performed on behalf of DHHS, which include reimbursement of honoraria/per diem, payment of all subcontractor services, and payment of all consultant services and supplies. The purpose of the work required under the referenced solicitation is to obtain the services of a contractor to reimburse travel and /or payment of honoraria for central office and regional consultants and the occasional payment of other oral health experts to attend meetings and workshops at the national, state and locale levels as determined by the Project Officer. The purpose of the contact was not to procure dental services as stated in your letter. Attached for your information is a copy of the Statement of Work.

The goal of every acquisition action in HRSA is not only to meet CICA and FAR requirements, but also to obtain the best value for the Government. Given the nature of the work required, the Events Management BPA also provided HRSA the ability to issue a Firm Fixed price order, which placed the maximum burden of risk on the contractor and little risk on the Government.

Furthermore the DHHS Strategic Sourcing BPAs, which were awarded under the Federal Supply Schedules/GSA Schedules, allows HRSA to meet the use of a priority Government supply source. GSA Schedules have met the requirements under CICA by acquiring supplies and services, including leased space, through the use of full and open competitive procedures; thereby, allowing HRSA to meet its competition requirements.

Should you have any additional questions, please feel free to contact Ms. Alexandra Garcia at (301) 443-5116.

Sincerely,

Steven L. Zangwill
Director, Division of Procurement Management
Health Resources and Services Administration

Enclosure

cc: Douglas W. Kornreich
Mogbeyi E. Omatete
Alexandra Garcia

CONTAINS INFORMATION THAT IS PROPRIETARY TO MCKING CONSULTING CORPORATION AND SHOULD NOT BE DISCLOSED WITHOUT THE PRIOR WRITTEN CONSENT OF MCKING CONSULTING CORPORATION

# Attachment G

**STATEMENT OF WORK**
August 8, 2006

**I. Background**

From 1966 through the mid-1990's, the Maternal and Child Health Bureau (MCHB) and its predecessor dental programs collaborated closely with the Administration for Children and Families' Office of Head Start (OHS), formally known as the Head Start Bureau. During that period, MCHB provided the following assistance:

- Provided dental training and technical assistance (T/TA) to Head Start programs across the country.
- Developed dental program protocols and standards.
- Developed dental T/TA networks using the infrastructure of established state run dental programs, professional dental organizations and training institutions representing dentists and dental hygienists.
- Developed appropriate best practice interventions and training programs to support the dental consultant network.
- Developed dental consultant manuals and conducted annual workshops to train new consultants.
- Developed standardized interventions to address problems common to several grantees.

In an effort to consolidate training and technical assistance services to Healthy Start grantees, the OHS ended its collaboration with MCHB in 1993.

Beginning in the mid 1009's, the oral health status of low-income children has gained considerable interest among various Federal programs due to recent research which indicated that they experience a higher prevalence of preventable dental disease than children from families with higher incomes. A review of recent and current Head Start Program Information Report data indicates that access to oral health services is the number one health problem affecting Head Start children and families. Moreover, access to dental services is the health concern most frequently expressed by Administration for Children and Families, Regional Office Program Specialists, Head Start Directors, Health Managers, and parents. In 1994 the newly established Early Head Start program for low-income families with infants and toddlers, and pregnant women also reported difficulties in obtaining both dental preventive and treatment services.

In 1998 the Maternal and Child Health Bureau and The Health Care Financing Administration developed a joint Oral Health Initiative to address the oral health needs of children enrolled in Medicaid and the State Child Health Insurance Program. The following year representatives from MCHB and The Special Supplemental Nutrition Programs for Women, Infants and Children approached the Healthy Start Bureau regarding strategies for improving the oral health status of low-income children. Subsequently, the Head Start and Partners Forum on Oral Health was held in September of 1999 for the purpose of developing strategies to increase collaboration at the Federal, state, and local levels which would lead to improved oral health services for low-income children and families. Each of the Federal partners contributed funds for the

development of three research papers that were presented at the Forum. The papers addressed oral health and nutrition, caries risk assessment and prevention, and access to oral health services, and were subsequently published in the summer 2000 issue of the *Journal of Public Health Dentistry.*

As a result of the September 1999 Oral Health Forum, the Head Start Bureau and the Maternal and Child Health Bureau renewed their collaboration through the development of an Intra-Agency Agreement in 2001. In general, during the first three years of their collaboration OHS and MCHB focused on plan development and on capacity building at the Federal, regional, state, and local levels. Since 2001, 12 Regional Oral Health Forums have been held with 49 additional state Oral Health Forums funded for the purpose of developing Regional and state Oral Health Strategic Plans. In particular, during the first four years the collaborators focused on the following goals:

- Elevating the profile of Head Start among the dental community and beginning to rebuild community linkages between Head Start / Early Head Start programs and dental providers.
- Developing strategies for removing barriers at the national, regional, state and local levels to oral health services for Head Start / Early Head Start children.
- Gathering and assessing education on preventive and early intervention to promote oral health.
- Accessing dental care practices currently being used by Head Start / Early Head Start programs.

Over the next several years, the Head Start Bureau and the Maternal and Child Health Bureau seek to build on their successes since renewing their collaboration in 2001. This includes meeting the following goals:

- Implementing oral health programs to support local Head Start / Early Head Start programs in meeting the oral health requirements of the Head Start Program Performance Standards.
- Implementing the goals of the Head Start Bureau's revised technical assistance system.
- Implementing evidence based preventive, early intervention into service delivery models.
- Implementing promising practices and strategic plans developed at national, regional and local levels.
- Increase the number of pediatric and general dentists available to treat E/HS children.

Under the current Inter-Agency Agreement, the OHS has tasked the MCHB to meet these goals by performing the following activities:

- Provide training and technical assistance to ACF Regional Offices through Regional Oral Health Consultants;
- Review and assess oral health policies impacting services to E/HS children and families;
- Raise public and professional awareness of the oral health needs of HS/EHS programs and develop collaborative programs with organizations at local;
- Enhance information collection and sharing; communication; and resource development and implementation of promising practices, education and service delivery models;
- Explore the feasibility of special projects (i.e., GIS mapping) for strategic planning.

**II. Purpose**

The purpose to this Task Order is to provide logistics management services for the staffing of Head Start oral health expert consultants to assist the Office of Head Start (OHS) and Maternal and Child Health Bureau (MCHB) implement Head Start oral health activities at the national and twelve (12) regional levels.

## III. Scope of Work

The scope of work of this Task Order requires reimbursement of travel and/or payment of honoraria for central office and regional consultants, and the occasional payment of other oral health experts to attend meetings and workshops at national, state and local levels as determined by the Project Officer. The consultants and experts will be comprised primarily of dentists and dental hygienists identified by the Project Officer.

The scope of work **does not** include the requirement for the Contractor to manage support for meetings, conferences, training events, etc., in which the Central Office Lead Consultant (COLC), and Regional Head Start Oral Health Consultants (RHSOHC) and other oral health experts participate. The scope of work **does** emphasize the logistic nature of the contract requirement for managing a reimbursement mechanism for honoraria and/or travel in support of Head Start regional activities and events. The following is an estimate of days for which honoraria and travel are needed:

| REGIONS | CONSULTANT TYPE | LOCATION | REGIONAL OFFICE DAYS PER YEAR | TRAINING DAYS PER YEAR | TOTAL DAYS PER YEAR |
|---|---|---|---|---|---|
| Region I | Hygienist | Boston, MA | 75 | 10 | 85 |
| Region II | Dentist | New York, NY | 75 | 10 | 85 |
| Region III | Dentist | Philadelphia, PA | 75 | 10 | 85 |
| Region IV | Dentist | Atlanta, GA | 100 | 10 | 110 |
| Region V | Dentist | Chicago, IL | 100 | 10 | 110 |
| Region VI | Hygienist | Dallas, TX | 100 | 10 | 110 |
| Region VII | Dentist | Kansas City, MO | 75 | 10 | 85 |
| Region VIII | Hygienist | Denver, CO | 100 | 10 | 110 |
| Region IX | Dentist | San Francisco, CA | 100 | 12 | 112 |
| Region X | Hygienist | Seattle, WA | 75 | 10 | 85 |
| Region XI | Dentist | Washington, DC | 100 | 10 | 110 |
| Region XII | Dentist | Washington, DC | 100 | 10 | 110 |
| Central Office | Dentist | Washington, DC | 200 | 20 | 220 |
| Other Consultants | Hygienist | | 20 | 5 | 2.5 |
| Other Consultants | Dentist | | 20 | 5 | 2.5 |

## IV. Tasks

The Contractor shall furnish the necessary personnel, materials, and facilities to perform the following tasks for each scheduled meeting unless otherwise indicated:

### 4.1 Meet with the Project Officer

The Contractor shall meet with Project Officer (PO) within seven (7) days of the effective date of the contract (EDOC) in Rockville, Maryland. The meeting will take place at the office of the Project Officer in Rockville, Maryland to discuss the scope of the contract, including goals and objectives, processes, time frames, priorities, budget issues (including the selection of a COLC, RHSOHCs and other experts that affect implementation of this contract). The Contractor will be informed regarding monthly activity tracking/reporting of consultant activity.

### 4.2 Support for Oral Health Experts

The Contractor shall provide reimbursement of travel and/or payment of honoraria to a COLC and 13 RHSOHCs who will provide oral health expertise to Head Start regional office and contract regional staff. Additionally, the Contractor shall support two other consultants for selected activities as determined by the PO. Support for consultants shall be initiated through an activity request, authorized by the PO, to the Contractor.

The COLC and RHSOHCs and other consultants shall be selected by the Project Officer from a pool of previously identified oral health consultants. Consultant services needed are expected to include:

- Consultant services to the Central Office and Head Start Regional Offices for planning, training, workshops or other activities.. These services will vary in accordance with the table of activity found on page 4 of the Scope of Work.
- The PO may determine if some regions shall receive additional consultant days
- The PO shall approve consultant services on a quarterly basis and review all vouchers for payment of services rendered.
- Honoraria for consultants shall be established by the PO. The amount of honorarium shall vary depending on the educational training and expertise of the RHSOHC. Only dentists and dental hygienists shall be consultants:
    1. Dentists: $500 to $900 per day. (Average $800)
    2. Dental Hygienists: $250 to $500 per day. (Average $400)
- Each RHSOHC is expected to make five (5) out of area trips of two days duration per year.
- Other consultants will be required for 10 trips, of two days duration. The PO shall determine if honoraria and/or travel is to be paid by the Contractor for other consultants for select activities.

### 4.3 Maintain Mailing Lists

The Contractor shall maintain an up-to-date mailing list of all RHSOHCs. The mailing list shall include both email and street addresses to correspond with each. The PO will provide the initial mailing list to the Contractor along with subsequent directions to add or delete names. The Contractor shall include a copy with monthly progress reports.

4.4 Pay Honoraria and Reimburse of Expenses

The Contractor shall reimburse all RHSOHC and other consultants for honoraria and expenses within 30 calendar days of receipt of all required information and receipts. All travel reimbursement should be in accordance with the Federal Travel Regulations.

4.5 Prepare Progress Reports

The Contractor shall provide progress reports on a monthly basis. At a minimum, these reports shall contain the following items:

- Significant problems encountered and corrective action taken
- Monthly and cumulative expenditures
- Projected expenditures
- Recommendations

The Contractor shall prepare the reports to be cumulative in nature. That is, each report shall include information from all previous reporting periods.

06-S240-0517
Attachment B.

## V. SCHEDULE OF DELIVERABLES

Unless otherwise indicated in the Statement of Work, the contractor shall submit the following items in the quantities and by the dates listed below to the Project Officer:

| tem | Description | Quantity | Due Date |
|---|---|---|---|
| 1 | Mailing list | Email + 1 hard copy | Monthly |
| 2 | Honoraria and reimbursements | As required per consultant | 30 calendar days of receipt of all required reimbursement information |
| 3 | Progress reports | Email + 1 hard copy | Monthly |

CONTAINS INFORMATION THAT IS PROPRIETARY TO MCKING CONSULTING CORPORATION AND SHOULD NOT BE DISCLOSED WITHOUT THE PRIOR WRITTEN CONSENT OF MCKING CONSULTING CORPORATION

# Attachment H

A. 04-N240-5031

Attachment A.

## STATEMENT OF WORK

**Background**

From 1966 through the mid-1990's, the Maternal and Child Health Bureau (MCHB) and its predecessor dental programs collaborated closely the Administration for Children and Families' Head Start Bureau (HSB). During that period, MCHB provided the following assistance:

- Provided dental training and technical assistance (T/TA) to Head Start programs across the country.
- Developed dental program policies and standards.
- Developed dental T/TA networks using the infrastructure of established state run dental programs, professional dental organizations and training institutions representing dentists and dental hygienists.
- Developed appropriate best practice interventions and training programs to support the dental consultant network.
- Developed dental consultant manuals and conducted annual workshops to train new consultants.
- Developed standardized interventions to address problems common to several grantees.

In an effort to consolidate training and technical assistance services to Healthy Start grantees, the HSB ended its collaboration with MCHB in 1993.

Subsequently, the oral health status of low-income children has gained considerable interest among various Federal programs due to recent research which indicated that they experience a higher prevalence of preventable dental disease than children from families with higher incomes. A review of recent and current Head Start Program Information Report data indicates that access to oral health services is the number one health problem affecting Head Start children and families. Moreover, this apparent link is the health concern most frequently expressed by Administration for Children and Families, Regional Office Program Specialists, Head Start Directors, Health Managers, and parents. In 1994 the newly established Early Head Start program for low-income families with infants and toddlers, and pregnant women also reported difficulties in those populations obtaining both dental preventive and treatment services.

In 1998 the Maternal and Child Health Bureau and The Health Care Financing Administration developed a joint Oral Health Initiative to address the oral health needs of children enrolled in Medicaid and the State Child Health Insurance Program. The following year representatives from MCHB and The Special Supplemental Nutrition Programs for Women, Infants and Children approached the Healthy Start Bureau regarding strategies for improving the oral health status of low-income children. Consequently, the Head Start and Partners Forum on Oral Health was held in September of 1999 for the purpose of developing strategies to increase collaboration at the Federal, state, and local levels which would lead to improved oral health services for low-income children and families. Each of the Federal partners contributed funds for the development of three research papers that were presented at the Forum. The papers addressed oral health and nutrition, caries risk assessment and prevention, and access to oral health services, and were subsequently published in the summer 2000 issue of the *Journal of Public Health Dentistry.*

As a result of the September 1999 Oral Health Forum, the Head Start Bureau and the Maternal and Child Health Bureau renewed their collaboration with Intra-Agency Agreement in 2001. In general, during the first three years of their collaboration HSB and MCHB focused on plan development and on capacity building at the Federal, regional, state, and local levels. Since 2001, 12 Regional Oral Health Forums have been held with 38 additional state Oral Health Forums being funded for the purpose of developing Regional and state Oral Health Strategic Plans. In particular, during the first three years the collaborators focused on the following goals:

- Elevating the profile of Head Start among the dental community and beginning to rebuild community linkages between Head Start / Early Head Start programs and dental providers.
- Developing strategies for removing barriers at the national, regional, state and local levels to oral health services for Head Start / Early Head Start children.
- Gathering and assessing education on preventive and early intervention to promote oral health.
- Accessing dental care practices currently being used by Head Start / Early Head Start programs.

Over the next several years, the Head Start Bureau and the Maternal and Child Health Bureau seek to build on their successes since renewing their collaboration in 2001. This includes meeting the following goals:

- Implementing oral health programs to support local Head Start / Early Head Start programs in meeting the oral health requirements of the Head Start Program Performance Standards.
- Implementing the goals of the Head Start Bureau's revised technical assistance system.
- Implementing evidence based preventive, early intervention into service delivery models.
- Implementing promising practices and strategic plans developed at national, regional and local levels.

Under the current Inter-Agency Agreement, the HSB has tasked the MCHB to meet these goals by performing the following activities:

- Serve as liaison to all Federal, State and community programs and foundations as it relates to E/HS oral health issues.
- Provide oral health expertise to the HSB.
- Provide oral health expertise at the Regional Office level.
- Integrate E/HS into State dental programs and State Dental Director ongoing activities.
- Increase the number of pediatric and general dentists available to treat E/HS children.
- Continue to raise public and professional awareness of the oral health needs of E/HS programs and develop collaborative programs with these organizations.

Under this contract only the provision of oral health expertise at Regional Office Level shall occur.

**Purpose**

The purpose to this Task Order is to provide logistics management services for Regional Oral Health Care consultants and other oral health experts to provide technical assistance to the twelve (12) Head Start Regional Offices.

**Scope of Work**

The scope of work of this Task Order includes the coordinating the travel and/or honoraria for Regional Oral Health consultants and other oral health experts to attend meetings, workshops and training at the twelve Head Start Regional Offices as determined by the Project Officer. The scope of work **does not** include the requirement for the Contractor to provide logistics management service to support the meetings, conferences, training events, etc. in which the Regional Oral Health consultants and other oral health experts will participate. The consultants and experts will primarily comprise dentists and dental hygienists identified by the Project Officer. The table below provides the estimated number of days by region for which travel and/or honoraria will be required during the period of performance of this Task Order.

| REGIONS | LOCATION | REGIONAL OFFICE DAYS PER YEAR | TRAINING DAYS PER YEAR | TOTAL DAYS PER YEAR |
|---|---|---|---|---|
| Region I | Boston, MA | 50 | 10 | 60 |
| Region II | New York, NY | 50 | 10 | 60 |
| Region III | Philadelphia, PA | 50 | 10 | 60 |
| Region IV | Atlanta, GA | 50 | 10 | 60 |
| Region V | Chicago, IL | 50 | 10 | 60 |
| Region VI | Dallas, TX | 50 | 10 | 60 |
| Region VII | Kansas City, MO | 80 | 10 | 90 |
| Region VIII | Denver, CO | 50 | 10 | 60 |
| Region IX | San Francisco, CA | 85 | 12 | 97 |
| Region X | Seattle, WA | 50 | 10 | 60 |
| Region XI | Washington, DC | 50 | 10 | 60 |
| Region XII | Washington, DC | 50 | 10 | 60 |
| Other Consultants | Locations to be determined | | 10 | 10 |

**Tasks**

The Contractor shall furnish the necessary personnel, materials, and facilities to perform the following tasks for each scheduled meeting unless otherwise indicated:

1. Meet with the Project Officer

   The Contractor shall meet with Project Officer within seven (7) days of the effective date of the contract (EDOC) in Rockville, Maryland. The meeting will take place at the office of the Project Officer in Rockville, Maryland to discuss the scope of the contract, including goals and objectives, processes, time frames, priorities, budget issues

(including the selection of expert consultants, phased in implementation, of regional experts, reporting and others issues that affect implementation of this contract). Based on the results of the meeting, the Contractor shall develop a draft format to be used for the activity tracking spreadsheets as described in Task 4 to identify pre-authorized consulting activities. The Contractor shall revise the draft format based on comments from the Project Officer.

2. Support Regional Oral Health Experts

The Contractor shall support a network of dentists and dental hygienists, Regional Oral Health Experts (ROHE), to provide oral health expertise to Head Start regional office and contract regional staff. Additionally, the Contractor shall support other consultants for selected activities as determined by the PO. Support for the ROHE and other consultants shall be initiated through an activity request, authorized by the PO, to the Contractor. The Contractor shall reimburse and pay honoraria to consultants for technical assistance provided as authorized by the PO through the activity tracking procedure established in Task 1. All reimbursement shall be in accordance with the Federal Travel Regulation and typically comprise travel costs, per diem for MI&E and lodging, and miscellaneous ground transportation costs such as taxis and parking. The Contractor shall not be responsible for coordinating or arranging travel, lodging or logistical support for meetings.

All Regional Oral Health Experts (ROHE) and other consultants shall be selected by the Project Officer. Estimated consultant services include:

- Each ROHE shall provide 50 days of consultant services to Head Start Regional Offices and an additional 10 days of service for planning, training, workshops or other activities per year as determined by the PO. The addition of ROHE will be incremental over the course of the first year of the contract depending upon the developmental stage of the Head Start Regional Office.
- The PO may determine if some regions shall receive additional expert days
- The PO shall approve consultant services on a quarterly basis and review all vouchers for payment of services rendered.
- Honoraria for ROHE shall be established by the PO. The amount of honorarium shall vary depending on the educational training and expertise of the ROHE. Only dentists and dental hygienists shall be ROHE:
    1. Dentists: $400 to $900 per day. (Average $700)
    2. Dental Hygienists: $200 to $400 per day. (Average $300)
- Each ROHE is expected to make 5 out of area trips of two days duration per year.
- Other consultants will be required for 10 trips, of two duration, for each of the two years of the contract. The PO shall determine if honoraria and/or travel is to be paid by the Contractor for other consultants for select activities.

3. Maintain Mailing Lists

The Contractor shall maintain and update mailing list of ROHE's. The mailing list shall include both email and street addresses as necessary to correspond with each. The Project Officer will provide the initial mailing list to the Contractor along with subsequent direction to add or names. The Contractor shall include a copy of with the monthly progress reports.

4. Track Activities

The Contractor shall track the activities of all ROHE and consultants using the activity tracking spreadsheets. The Contractor shall transmit the spreadsheets to the Project Officer on a monthly basis for his analysis of the amount and types of support requested and provided. The Contractor shall meet with the Project Officer to determine the elements to be collected and the format in which these reports are to be made.

5. Pay Honoraria and Reimburse of Expenses

The Contractor shall reimburse all ROHE and other consultants for honoraria and expenses within 30 calendar days of receipt of all required information and receipts. All travel reimbursement shall be in accordance with the Federal Travel Regulations.

6. Prepare Progress Reports

The Contractor shall provide progress reports on a quarterly basis. At a minimum these reports shall contain the following items:

- Significant accomplishments.
- Significant problems encountered and corrective action taken.
- Monthly and cumulative Expenditures.
- Projected future activities.
- Recommendations

The Contractor shall prepare the reports to cumulative in nature. That is, each report shall include information from all previous reporting periods.

**CERTIFICATE OF SERVICE**

I hereby certify that I caused a true and correct copy of McKing Consulting Corporation's Complaint, Memorandum of Points and Authorities in Support of Application for Temporary Restraining Order and Motion for Preliminary Injunction, Application for Temporary Restraining Order, and Motion for Preliminary Injunction, to be served this 13th day of November, 2006, by facsimile on the following:

Bryant Snee
Department of Justice
Commercial Litigation Branch, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530

Counsel for Defendant United States

Lily Richardson
Chief Executive Office
Professional and Scientific Associates
2100 Reston Parkway
Suite 300
Reston, VA 20191

Jessica C. Abrahams /slk
Jessica C. Abrahams

DC:50443122.1