ORIGINAL

FILED
NOV 13 2006
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

MCKING CONSULTING CORPORATION,

Plaintiff,

v.

THE UNITED STATES OF AMERICA,

Defendant.

No. 06-766 C

Judge: ______________________

**MCKING CONTRACTING CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ITS MOTION FOR PRELIMINARY INJUNCTION**

Jessica C. Abrahams
McKENNA LONG & ALDRIDGE LLP
1900 K Street, N.W.
Washington, DC 20006
Tel: (202) 496-7500
Fax: (202) 496-7756

Counsel of Record for Plaintiff McKing Contracting Corporation

Of Counsel:

Shari L. Klevens
Asa Garber
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, DC 20006
(202) 496-7500

Dated: November 13, 2006

McKing Contracting Corporation ("McKing") seeks injunctive relief to avoid allowing the United States, acting through the Human Resources and Services Administration ("HRSA") of the Department of Health & Human Services ("HHS"), to override the mandatory stay requirements of the Competition in Contracting Act ("CICA"), which this Court has recognized "were designed to preserve the status quo until the Comptroller General issues [its] recommendation, in order to ensure that the recommendation would be considered" and to prevent what would otherwise be "*faits accomplis*" in favor of the agency. *PGBA v. United States,* 57 Fed. Cl. 655, 658 n.3 & 660 n.8 (quoting H. Rep. No. 99-138 (1985) and *Lear Siegler, Inc., Energy Prods. Div. v. Lehman*, 842 F.2d 1102, 1105 (9th Cir. 1988).

The United States Court of Federal Claims has jurisdiction to review an agency's decision to override a CICA stay. *See Cigna Gov't Servs., LLC v. United States,* 70 Fed. Cl. 100 (2006). The review standard established by 28 U.S.C. § 1491(b)(4) is whether there exists a rational basis to override the automatic stay (*i.e.*, whether the decision to override the stay was arbitrary, capricious or otherwise contrary to law). *See Chapman Law Firm Co. v. United States*, 62 Fed. Cl. 464 (2004).

This is an action by McKing, pursuant to 28 U.S.C. § 1491(b), objecting to HRSA's decision to override the automatic stay of Professional & Scientific Associates, Inc.'s ("PSA") performance of task order HHSH240F5806 as arbitrary, capricious, and otherwise contrary to law. This action also seeks declaratory and permanent injunctive relief preventing the HRSA from allowing PSA to commence contract performance until the GAO resolves McKing's protest.

Until such time that this Court can issue a ruling on the merits of McKing's Complaint – or until the GAO can resolve McKing's Protest – McKing respectfully requests that this Court

issue a temporary restraining order (and/or preliminary injunction) precluding HRSA and PSA from performing task order HHSH240F5806, awarded under HRSA Solicitation 06-S240-0517-SS ("the Solicitation").

## I. STATEMENT OF THE QUESTION

Is McKing entitled to a temporary restraining order and/or preliminary injunction to require HRSA to stay PSA's performance of task order HHSH240F5806?

## II. STATEMENT OF THE CASE

McKing began providing logistical management support services for the MCH/Head Start Regional Oral Health Expert Logistics Management Program under contract No. HHSH24055006 on September 29, 2004. *See* Exhibit A to Complaint, Declaration of Jeffrey Human, ¶ 5. McKing currently performs work under that contract and is scheduled to perform the work until at least December 31, 2006. *Id.*.

On August 24, 2006, Stuart Sklamm, the Contracting Officer for HRSA, sent McKing the Solicitation for additional logistical management support services for the MCH/Head Start Regional Oral Health Expert Logistics Management Program for a contract period of 12 months. *See* Exhibit B to Complaint, Email dated August 24, 2006 from Stuart Sklamm to HHS meetings and J. Chandler, and Exhibit C to Complaint, Solicitation 06-S240-0517-SS.

Rather than re-competing these services through an open procurement, however, the bidding was open only to events management Blanket Purchase Agreement ("BPA") holders pursuant to the Strategic Sourcing Initiative ("SSI"). *See* Exhibit C to Complaint, Solicitation 06-S240-0517-SS. As a result, McKing was ineligible to bid on the contract, even though McKing was the incumbent performing those same support services. The work performed by McKing pursuant to its incumbent contract is identical to the work proposed under the BPA task

order. Then, HRSA awarded the work under task order HHSH240F5806 to PSA to provide the dental support services for the Head Start Program.

On October 6, 2006, McKing timely filed a bid protest with the GAO objecting to the improper use of the SSI for Solicitation No. HHSH240F5806 and HRSA's decision to award the contract to PSA. In its protest, McKing argued that the HRSA's award decision violated law and regulation and prejudices McKing because the HRSA: (1) failed to adhere to the full and open competitive procedures required under CICA, 41 U.S.C. §§ 253 et seq.; (2) improperly applied the SSI to the contract in dispute, thus improperly limiting consideration only to BPA holders; and (3) in so doing, wrongly prevented McKing, the incumbent contractor, from competing for the new contract. *See* Exhibit D to Complaint, McKing's Protest to the GAO, "Stay of Award Requested."

McKing's timely GAO protest triggered the statutory CICA stay, 31 U.S.C. § 3553(d)(3) and (4).

On November 2, 2006, Mr. Jeffrey Human, a Vice President of and Project Director for McKing, spoke with Mark Nehring, the Contracting Officer for the current contract held by McKing, regarding the status of funds and work under the contract. Mr. Nehring told Mr. Human that he had been informed by the HRSA contracts office that he could begin immediate implementation of the disputed PSA contract. Mr. Nehring then indicated that he had already called PSA to arrange to quickly implement that contract so that the work under the contract could be transferred to PSA no later than the beginning of December. *See* Exhibit A to Complaint, Human's Declaration, ¶ 7.

Although McKing is the incumbent contractor and is prepared to continue performing under its current contract, HRSA failed to provide any justification to override the stay of

performance, nor has the agency filed the Determination and Findings ("D&F") necessary to override the stay, pursuant to 31 U.S.C. § 3553(d)(3)(C).

## III. ARGUMENT

When considering an application for a temporary restraining order or a motion for preliminary injunctive relief, the court must weigh four factors: "(1) immediate and irreparable injury to the movant; (2) the movant's likelihood of success on the merits; (3) the public interest; and (4) the balance of hardship on all the parties." *Aeroplate Corp. v. United States*, 67 Fed. Cl. 1,2 (2005) (quoting *U.S. Ass'n of Importers of Textiles & Apparel v. United States*, 413 F.3d 1344, 1347-48 (Fed. Cir. 2005)). No single factor is determinative, and "the weakness of the showing regarding one factor may be overborne by the strength of the others." *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993). Applying these factors to the circumstances of this case, McKing is entitled to injunctive relief.

### A. McKing Will Prevail on the Merits of its Complaint[1]

CICA, 31 U.S.C. § 3553(d)(3), "provides that if the agency receives [timely] notice of a bid protest in the GAO, 'the contracting officer may not authorize performance of the contract to begin while the protest is pending.'" *University Research Co., LLC v. United States*, 65 Fed. Cl. 500, 502 n.3 (2005) (quoting 31 U.S.C. § 3553(d)(3)(A)(i)); *see also* 31 U.S.C. § 3553(d)(3)(A)(ii) (providing that when an agency receives notice of bid protest where

[1] This factor – likelihood of success on the merits – is the most significant one in the injunctive relief calculus because '"Congress did not require any evaluation of injunctive relief factors as a prerequisite to stay of contract performance upon the filing of a protest with the GAO.'" *Advanced Systems Development, Inc. v. United States*, 72 Fed. Cl. 25, 36 (July 21, 2006) (quoting *Chapman Law Firm Co. v. United States*, 65 Fed. Cl. 422, 424 (2005), and holding that "the statute gives presumptive weight to the otherwise required showings of irreparable harm and public interest"). Indeed, should this Court ultimately reach the merits of McKing's Complaint, the remaining injunctive relief prongs would be irrelevant because the CICA stay can be imposed via declaratory relief. *Id.* (quoting and following *Chapman Law Firm, supra*, and *CIGNA Government Services v. United States*, 70 Fed. Cl. 100, 114 (2006)).

"authorization for contract performance to proceed was not withheld..., the contracting officer shall immediately direct the contractor to cease performance under the contract"). "The automatic stay is intended to preserve the *status quo* during the pendency of the [GAO] protest so that an agency [can]not cavalierly disregard the GAO's recommendation to cancel the challenged award." *Advanced Systems Development, Inc. v. United States*, 72 Fed. Cl. 25, 30 (July 21, 2006); *see also PGBA, LLC v. United States*, 57 Fed. Cl. 655, 657-600 (discussing legislative history and purpose of CICA stay); *CIGNA Government Services v. United States*, 70 Fed. Cl. 100, 102 n.5 (2006) ("[A]bsent the stay, GAO's protest process – an enforcement mechanism for competition in government procurement – can be rendered illusory....").

Under CICA, the head of agency procurement activity may decide not to stay a protested contract *only if* he or she first issues a "written finding" that: (i) the stay would be contrary to the best interests of the United States; or (ii) circumstances are so urgent and compelling that they do not permit delay. 31 U.S.C. § 3553(d)(3)(C). "The statute asks not for a mere conclusion but for a finding that...[notifies] the reader of the bases upon which the decision to proceed with the particular contract rests." *See Universal Shipping Co. v. United States*, 652 F. Supp. 668 (D.D.C. 1987). In other words, to override an automatic CICA stay, the agency must sufficiently explain its reasoning. *Id.* at 675.

In this case, the HRSA failed to issue *any* written findings. Rather, on November 2, 2006, HRSA merely informed McKing by telephone that HRSA had already called PSA to arrange to quickly implement that contract so that the work under the contract could be transferred to PSA no later than the beginning of December. *See* Exhibit A to Complaint, Human's Declaration, ¶ 7. HRSA did not identify any findings or justification for the agency's decision to override the CICA stay. It has now been nearly one week since HRSA's decision to

override the stay and McKing received no further communication from HRSA on this subject. Under 31 U.S.C. § 3553(d)(3)(C), the agency may continue performance of the contract only after the head of procuring activity issues its mandatory written finding that performance is in the best interests of the United States or that urgent circumstances compel performance. HRSA's telephone communication that it was lifting the stay must constitute the agency's official decision to override the automatic CICA stay. As such, it is grossly inadequate.

HRSA's decision to override the automatic CICA stay failed to comply with the override procedures as required by 31 U.S.C. § 3553(d)(3)(C). The override decision failed to provide *any* findings at all, much less findings establishing that the decision was in the best interests of the United States or that there exist compelling circumstances to support an override of the stay. The agency's failure to provide any justification for its decision to override the automatic CICA stay does not meet the statutory requirements and must be set aside as contrary to law. *See, e.g., Universal Shipping*, 652 F. Supp. at 668 (the court overturned the agency's decision to override the automatic CICA stay because the agency failed to sufficiently explain its reasoning, as required by the statute); *Chapman Law Firm, Co. v. United States*, 62 Fed. Cl. 464 (2004) (the agency's decision to override an automatic stay must be rationally based on the record).

Moreover, even assuming that HRSA had provided a justification for its decision to override the automatic CICA stay, such justification would not have legitimately met the agency's burden under 31 U.S.C. § 3553. As previously discussed, to override a automatic CICA stay, the agency must establish that suspension of its contract with PSA (task order HHSH240F5806): (i) would be contrary to the best interests of the United States; or (ii) that the circumstances are so urgent and compelling that contract suspension is not permissible. 31 U.S.C. § 3553(d)(3)(C). Further, courts have explained that best interests does not mean "best

interests of that agency or the agency's contracting officials" it means the best interests of the United States, which include "weighing the benefits Congress obviously felt were furthered by bolstering the bid protest process and, in turn, promoting competition in contracting." *See PGBA*, 57 Fed. Cl. at 663. HRSA cannot meet this standard.

Courts have held that where the incumbent contractor is in a position to offer the services contracted for by the agency on an interim basis, a determination to override an automatic stay is not rationally based. For example, in *Automation Technololgies, Inc. v. United States*, 72 Fed. Cl. 723 (2006), the Court granted the plaintiff's request for a declaratory judgment and declared that the override decision was unreasonable, arbitrary, and capricious. Specifically, the Court stated that although cost considerations are important to determining whether an override is appropriate, another important factor is whether the incumbent's current contract can be extended to provide the services needed. *See id.* Indeed, the Court concluded that the agency override was unreasonable, in part, because the incumbent's work could be extended by adding task orders to its contract and because "both the plaintiff and the intervenor have performed this work in the past." *Id.*

Similarly, in *Universal Shipping*, plaintiff contested the award of a food contract to a third-party supplier. *Universal Shipping*, 652 F. Supp. at 668. During the protest proceedings, however, the defendant agency overrode the stay of award to plaintiff. *Id.* at 670-71. Defendant agency argued that the decision to override the stay met the requirements of 31 U.S.C. 3553 because famine relief, which was the purpose of the food contract, was in the best interests of the United States. *Id.* at 675. The court agreed that famine relief was important, but noted that other contractors, including the incumbent plaintiff, could offer the services sought by defendant agency. Accordingly, the court overruled defendant agency's decision to override the contract

stay. The court reasoned that with the availability of other contractors, "service would seem able to proceed unabated and the Court cannot divine a rational or reasonable basis for the agency's conclusion that the interests of the United States would be protected only if the [third party] contractor performed the contract." *Id.*; *see also Chapman*, 62 Fed. Cl. at 464 (the court found that given the ability and willingness of the incumbent contractor to continue to perform the services required by the government agency, the government agency's decision to override the contract stay lacked a rational basis).

In this case, even if HRSA provided a justification to override the automatic CICA stay, much like the government agency's in *Universal Shipping* and *Chapman*, such justification would not be rationally based for four primary reasons. First, McKing is the incumbent contractor and is able to continue its performance in support of HRSA's MCH/Head Start Regional Oral Health Expert Logistics Management Program. *See* Exhibit A to Complaint, Human's Declaration, ¶ 5-6. Second, the services McKing provided in support of the MCH/Head Start Regional Oral Health Expert Logistics Management Program are identical to the services required under Contract No. HHSH24055006. *See* Exhibit A to Complaint, Human's Declaration, ¶ 6, and Exhibit D to Complaint, McKing's Protest, pp. 6-7. Third, there is no evidence to suggest that it is in the best interests of the United States if PSA, to the exclusion of any other contractor, performs the MCH/Head Start Regional Oral Health Expert Logistics Management Program contract. Finally, there exists no evidence of any "urgent circumstances" compelling the agency to override the stay.

Therefore, absent a specific justification by HRSA explaining why PSA, and no other contractor, including McKing, should perform the MCH/Head Start Regional Oral Health Expert

Logistics Management Program – an explanation HRSA has failed to provide – the Court should overturn HRSA's decision to override the stay.

### B. McKing Will Suffer Irreparable Harm Absent a Temporary Restraining Order or Preliminary Injunctive Relief

This Court has recognized that "Congress enacted the automatic stay on the premise that the failure of an agency to stay performance could result in a competitive disadvantage that might not be remedied, causing a contractor to lose an important business opportunity." *PGBA*, 57 Fed. Cl. at 664 (citing *Lear Siegler, Inc.*, 842 F.2d at 105). In this case, there is a distinct likelihood that, if a TRO or preliminary injunction is not granted, PSA will transition into the MCH/Head Start Regional Oral Health Expert Logistics Management Program to the point that McKing will be unable to retain sufficient staff to immediately resume administration of the contract, with the same level of quality performance, should the GAO ultimately sustain the Supplemental Protest. *See* Exhibit A to Complaint, Human's Declaration, at ¶ 8. McKing already has begun the process of reducing the size of the HRSA group, in part as the result of the anticipated loss of the current MCHB contract. In September, the HRSA staff had nine members, now reduced to eight, and with two more staff members notified of their impending termination. If the TRO or preliminary injunction is granted, however, McKing can continue to staff the project with its existing personnel. *Id.* at ¶ 10. McKing utilizes twelve highly specialized expert consultants under the current contract to provide oral health assistance to the twelve Head Start regional offices. If the work of the contract is transferred to PSA, these consultants may be expected to quickly terminate their contracts with McKing and seek work with PSA. *Id.* at ¶ 9. If McKing is not in a position to immediately resume high quality performance of the MCH/Head Start Regional Oral Health Expert Logistics Management Program contract, McKing will lose both credibility within MCHB and HRSA and profits. *Id.* at ¶ 11.

It is axiomatic that, under these circumstances, McKing will suffer an irreparable injury unless this Court grants McKing's application for a temporary restraining order or its motion for a preliminary injunction. "A loss of potential profits 'stemming from a lost opportunity to compete'" is "sufficient to constitute irreparable harm." *OTI America, Inc. v. United States*, 68 Fed. Cl. 646, 659 (2005) (quoting *Gentex Corp. v. United States,* 58 Fed. Cl. 634, 654 (2003)); *see also United Payors & United Providers Health Srvs., Inc. v. United States*, 55 Fed. Cl. 323, 333 (2003) (finding irreparable injury where plaintiff "would not be able to recover lost profits associated with its loss of business"). In short, "[a]n award of bid preparation costs would not, by itself, be sufficient to redress the injury to" McKing, should PSA be permitted to continue its transition. *OTI America, Inc.*, 68 Fed. Cl. at 659.

**C. The Balance of Harms and the Public Interest Decidedly Favors McKing**

HRSA would suffer no harm if it were enjoined from allowing PSA to proceed with contract performance. McKing successfully has been managing the MCH/Head Start Regional Oral Health Expert Logistics Management Program for two years and is ready and willing to continue performance of the Program. *See* Exhibit A to Complaint, Human's Declaration, ¶ 5. Moreover, the current contract for those services were extended until at least December 31, 2006. *Id.*

Finally, "[it] is well established that there is an overriding public interest in preserving the integrity of the federal procurement process by requiring government officials to follow procurement statues and regulations." *CW Government Travel, Inc. v. United States*, 61 Fed. Cl. 559, 576 (2004); *see also PGBA*, 57 Fed. Cl. at 663 ("In the instant case, the public's interest…lies in preserving the integrity of the competitive process – such, indeed, clearly was Congress' view in providing that, except in circumstances not yet demonstrated here, the automatic stay should prevail.").

In this case, the public's interest favors requiring HRSA to adhere to the CICA stay, particularly where the agency has not provided *any* justification for its override decision and

where McKing is able to continue uninterrupted performance of the MCH/Head Start Regional Oral Health Expert Logistics Management Program. Moreover, the public has "a long-term interest in ensuring that the new contract represents the best overall value to the government." *PGBA*, 57 Fed. Cl. at 663. As in *PGBA,* "[g]iven the fact that there is no real indication that...[a] say will impair services...[,] these long-term interests are paramount here and are best served by issuing the proposed injunction." *Id.*; *see also University Research*, 65 Fed. Cl. at 514 ("[t]he costs and inconvenience associated with the delay in transition caused by the issuance of a preliminary injunction in this case are typical of the costs and inconveniences that fact almost every new contractor seeking to unseat an incumbent contractor, and do not outweigh the imminent harm to plaintiff").

## IV. CONCLUSION

As evidenced by the foregoing, McKing meets all the requisites for a temporary restraining order and/or a preliminary injunction. Indeed, not granting McKing's application and motion would cause far more harm to the integrity of the procurement process, to the taxpayer, and to McKing, than allowing the *status quo*, which is an unsupported override of an automatic CICA stay, to remain undisturbed.

Dated: November 13, 2006

Respectfully submitted,

By: ______________________
Jessica Abrahams

McKENNA LONG & ALDRIDGE LLP
1900 K Street, N.W.
Washington, DC 20006
Tel: (202) 496-7500
Fax: (202) 496-7756

Counsel of Record for Plaintiff McKing Consulting Corporation

Of Counsel:

Shari L. Klevens
Asa Garber
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, DC 20006
(202) 496-7500