IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **McKING CONSULTING CORPORATION,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**THE UNITED STATES**<br><br>**Defendant.** | **BID PROTEST**<br><br>**No. 06-766** |

**NOTICE OF GAO DISMISSAL**

Professional and Scientific Associates, Inc. ("PSA"), by its undersigned counsel, has moved to intervene in the above-captioned proceeding. Pending action on its motion, PSA provides notice to the Court of a significant legal development in this case.

McKing Consulting Corporation's ("McKing") complaint and related pleadings seek injunctive relief pending resolution of McKing's bid protest at the Government Accountability Office ("GAO"), case number B-298964. Earlier today, GAO resolved the protest by dismissing it in its entirety (see attached decision).

Dated: November 15, 2006

Respectfully submitted,

/s Kristen E. Ittig

Kristen E. Ittig
HOLLAND & KNIGHT LLP
2099 Pennsylvania Avenue, NW Suite 100
Washington, DC 20006
(202) 862-5976
(202) 955-5564
kristen.ittig@hklaw.com

Attorney of Record for Professional and Scientific Associates, Inc.

*Of Counsel:*

David P. Metzger
HOLLAND & KNIGHT LLP
1600 Tysons Boulevard, Suite 700
McLean, VA
(703) 720-8036 (tel)
(703) 720-8610 (fax)
david.metzger@hklaw.com

Caitlin K. Cloonan
HOLLAND & KNIGHT LLP
1600 Tysons Boulevard, Suite 700
McLean, VA
(703) 720-8021 (tel)
(703) 720-8610 (fax)
caitlin.cloonan@hklaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that I caused a copy of the foregoing Notice of GAO Dismissal to be served by this 15th day of November 2006 upon:

Jessica C. Abrahams, Esq.
McKenna, Long & Aldridge
1900 K Street, NW
Washington, DC 20006
*Served by Electronic Filing*

Richard Schroeder, Esq.
U.S. Department of Justice
*Served by Electronic Mail*

/s Kristen E. Ittig
Kristen E. Ittig

# 4189799_v1

GAO
Accountability * Integrity * Reliability
United States Government Accountability Office
Washington, DC 20548

# Facsimile Transmission Sheet

**Date:** November ~~[illegible]~~ 15, 2006

Number of pages, including this cover sheet: 5

**Re:** B-298964; Protest of McKing Consulting Corporation

**From:** Paula A. Williams, Senior Attorney

| Name | Firm/Agency | Phone | Fax |
|---|---|---|---|
| Jessica C. Abrahams, Esq. | McKenna Long & Aldridge LLP | 202/496-7204 | 202/496-7756 |
| Michael I. Goulding, Esq. | Department of Health & Human Services | 410/786-8871 | 410/786-5187 |

**Comments:** None

GAO
Accountability • Integrity • Reliability
United States Government Accountability Office
Washington, DC 20548

Comptroller General
of the United States

# Decision

**Matter of:** McKing Consulting Corporation

**File:** B-298964

**Date:** November 15, 2006

---

**DECISION**

McKing Consulting Corporation (McKing) protests the Department of Health and Human Services' (HHS) issuance of delivery order No. HHSH240F5806 to Professional & Scientific Associates, Inc. (PSA) to perform logistics management services in support of HHS's Office of Head Start (OHS) and Maternal and Child Health Bureau (MCHB). The delivery order was issued to PSA pursuant to solicitation No. 06-S240-0517, which limited potential contractors to firms holding strategic sourcing blanket purchase agreements (BPA) for events management.[1] McKing, who does not hold the required BPA, protests that the solicitation should have been open to McKing, and further complains that the services sought are beyond the scope of PSA's BPA.

We dismiss the protest.

The protest, including attachments, shows that on August 24, 2006 the protester received a copy of the solicitation which limited the competition to the events management BPA holders. On August 29, 2006, McKing wrote a letter to the agency, referencing solicitation No. 06-S240-0517, and stating:

> McKing believes that this work should be re-competed pursuant to an unrestricted solicitation for an indefinite delivery indefinite quantity (IDIQ) contract. Such a course of action would permit McKing and other qualified offerors

---

[1] To implement its strategic sourcing program, the agency reports that it established agency-wide BPAs against multiple General Services Administration Federal Supply Schedule contracts to obtain three types of services–temporary administrative and professional staffing services, temporary professional and medical staffing services, and events management services

> the opportunity to compete and would be consistent with the requirements of the Competition in Contracting Act.

Protest, attach. C, Letter from McKing's Attorney to Procurement Official, at 1 (Aug. 29, 2006).[2]

On September 6, McKing's attorney again wrote to the agency, again referencing solicitation No. 06-S240-0517, stating:

> [W]e understand the deadline for submission of proposals under the Strategic Sourcing Initiative ("SSI") passed upon the close of business, September 1, 2006. . . .
>
> We request that you confirm . . . that this work will be re-competed pursuant to an unrestricted solicitation for an indefinite delivery indefinite quantity ("IDIQ") contract.

Protest, attach. D, Letter from McKing's Attorney to Procurement Official, at 1 (Sept. 6, 2006).[3]

By letter dated September 21, the agency responded to McKing's preceding correspondence, stating:

> [the agency] would not have proceeded to compete this requirement among the Strategic Sourcing BPA holders if it was outside the scope of work of this vehicle and/or not meeting the requirements under [FAR] 8.002(a)(2)(iii) for Priority of Use of government Supply Sources.
>
> The Events Management Strategic Sourcing BPA Statement of Work allows agencies to obtain Fiduciary Services necessary to be performed on behalf of DHHS, which

---

[2] We view the protester's August 29 letter as constituting an agency-level protest because it expressed dissatisfaction with an agency decision and requested corrective action. See ST Aerospace Engines Pte. Ltd., B-275725.3, Oct. 17, 1997, 97-2 CPD ¶ 106 at 3-4.

[3] The record shows that McKing also sent a letter, dated September 20, to the agency's Office of General Counsel, reiterating the protester's belief that it was not "appropriate to re-procure the requisite dental services for the Head Start Program by limiting competition to the four companies with which [the agency has BPAs] for events management instead of through an open procurement vehicle as has been done in the past." Protest, attach. E, Letter from McKing's Attorney, at 1 (Sept. 20, 2006).

> include reimbursement of honoraria/per diem, payment of all subcontractor services, and payment of all consultant services and supplies. The purpose of the work required under the referenced solicitation is to obtain the services of a contractor to reimburse travel and/or payment of honoraria for central office and regional consultants and the occasional payment of other health experts to attend meetings and workshops at the national, state and locale levels as determined by the Project Officer. The purpose of the contract was not to procure dental services as stated in your letter.

Protest, attach. F, Letter from Procurement Official, at 1 (Sept. 21, 2006).

By submission dated October 6, received in our Office on October 10, McKing filed this protest.

Our Bid Protest Regulations contain strict rules for the timely submission of protests. Where a protest is first filed with a contracting activity, any subsequent protest to our Office must be filed within 10 calendar days of actual or constructive knowledge of initial adverse agency action. 4 C.F.R. § 21.2(a)(3) (2006). While adverse agency action typically is a denial of the protest, it may also be a continuation of the procurement process, such as the agency's receipt of proposals. 4 C.F.R. § 21.0(f); Scopus Optical Indus., B-238541, Feb. 23, 1990, 90-1 CPD ¶ 221. A protester's continued discussion with the agency regarding subsequently raised protest issues does not toll our timeliness requirements. Robert B.Hammett-Recon., B-253720.2, B-253721.2, Aug. 3, 1993, 93-2 CPD ¶ 76.

On the record here, as discussed above, it is clear that McKing had actual knowledge of initial adverse agency action on September 1. More specifically, the agency's receipt of proposals on September 1, as scheduled--which McKing expressly acknowledged in its letter to the agency of September 6--constituted initial adverse agency action. Id. Accordingly, the 10 calendar day period for filing a protest with our Office commenced on September 1. McKing's protest, filed more than 30 days after the initial adverse agency action, is untimely and will not be considered.

The protest is dismissed.

Gary L. Kepplinger
General Counsel